

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF VIRGINIA**

Richmond Division

ALEXANDER C. GRAY,

Plaintiff,

v.

COMMONWEALTH SAVERS (formerly

Virginia College Savings Plan),

MARY G. MORRIS, in her individual

capacity,

CAROLYN BISHOP, in her individual

capacity, and

DEBBIE ALLAN, in her individual capacity,

Defendants.

Case No. 3:25-cv-00742

**FIRST AMENDED COMPLAINT**

(JURY TRIAL DEMANDED)

**INTRODUCTION**

1. Defendants discriminated and retaliated against Plaintiff, Director of Application Development, culminating in his termination on June 30, 2025—within hours after he notified leadership at 8:46 a.m. that he needed leave for family medical reasons to care for his wife's serious mental health condition.

2. For nearly five years, Plaintiff successfully managed fully remote and hybrid teams with documented positive performance, then faced escalating retaliation after disclosing his wife's bipolar disorder and suicide risk and requesting flexibility.

3. Despite recorded admissions that no written policy barred the requested arrangement, Defendants denied accommodations, escalated in-office demands by 500–600%, and forced termination under a pretext of "job abandonment."

4. This action seeks damages and equitable relief under the Family and Medical Leave Act (FMLA), Section 504 of the Rehabilitation Act, the ADA's association provision, and 42 U.S.C. § 1983.

**JURISDICTION AND VENUE**

5. This Court has federal-question jurisdiction under 28 U.S.C. § 1331; venue is proper in this District under 28 U.S.C. § 1391(b).

6. Commonwealth Savers receives federal financial assistance and is covered by Section 504; the individual defendants acted under color of state law in Virginia.

**PARTIES**

7. Plaintiff Alexander C. Gray served as Director of Application Development until June 30, 2025; his total compensation was approximately $290,000 annually.

8. Defendant Commonwealth Savers is a Virginia state agency (formerly Virginia College Savings Plan).

9. Defendant Mary G. Morris was the Chief Executive Officer and participated in the challenged decisions.

10. Defendant Carolyn Bishop was the Chief Operations Officer and Plaintiff's direct supervisor during the events at issue.

11. Defendant Debbie Allan was the HR Director and participated in the challenged actions.

**FACTUAL ALLEGATIONS**

12. From March 2020 through early 2025, Plaintiff led distributed development teams (employees and contractors across multiple states) without documented availability or performance deficiencies.

13. On February 13, 2025, Plaintiff received an annual performance review marked "On Target," approved by senior leadership, with no mention of availability problems.

14. On March 19, 2025—about five weeks later—Bishop invoked anonymous, undocumented complaints and increased Plaintiff's in-office requirement from one day every other week to three days per week (a five-fold increase).

15. At that time Plaintiff's CTO application was pending; the escalation followed close on the heels of protected disclosures regarding his wife's serious health condition.

16. On April 20, 2025, the CTO approved two weeks of remote work from Utah, which Plaintiff successfully performed without operational issues, demonstrating feasibility.

17. By May 2025, Plaintiff had expressly disclosed his wife's bipolar disorder and suicide risk to leadership and HR and requested flexibility to continue working while ensuring her safety near family support in Utah.

18. HR admitted there was no written policy prohibiting managers from working remotely or living out of state and characterized the Tuesday–Wednesday–Thursday presence as a recommendation or practice.

19. Plaintiff proposed alternatives—including trial periods, modified cadence with periodic travel, or role changes—to avoid disruption; Defendants refused to engage in a meaningful interactive process.

20. On June 5, 2025, Allan confirmed: "There is no policy restricting managers from working remotely or living out of state," and acknowledged Tuesday–Wednesday–Thursday was a recommendation.

21. On June 13, 2025, Bishop denied remote work for the upcoming week and directed use of PTO for days Plaintiff could not be in Richmond.

22. On June 23, 2025, Bishop stated in writing that "the ADAAA does not require accommodations to be provided for caregivers," and did not initiate any feasibility discussion regarding Plaintiff's request.

23. Commonwealth Savers' written Telework Policy allows employees to request telework "on an ad hoc basis due to personal or business need" and requires that "the employee, their manager, and the Chief Engagement Officer will discuss the feasibility." Despite this policy, no feasibility discussion ever occurred for Plaintiff's request.

24. In 2021, when employee Chad Bailey requested relocation to Utah for personal preference, management approved it—Plaintiff texted "Utah is a go." When Plaintiff later

requested the identical Utah arrangement due to his wife's medical necessity, the request was denied.

25. Bishop further required Plaintiff to use PTO for any Tuesday–Thursday absence when unable to be physically present in Richmond.

26. On June 27, 2025, Morris, Bishop, and Allan presented an ultimatum to resign or be terminated; they stated they had "already walked through all of this with counsel."

27. On June 30, 2025, at 8:46 a.m., Plaintiff notified leadership he needed leave (PTO) that day for family medical reasons; around 10:00 a.m. the same day, Defendants terminated him for "job abandonment."

28. The termination was deliberately dated June 30 rather than July 1, causing the loss of health coverage for the following month during an acute medical crisis.

29. Similarly situated comparators were treated more favorably; for example, Bailey was offered Utah remote work for personal reasons while Plaintiff's medically necessary request was denied.

30. Multiple team members supported Plaintiff's performance and availability and expressed concern about leadership gaps if he were removed.

31. Termination ran counter to business interests and left the organization without adequate technical leadership.

32. Plaintiff timely filed EEOC Charge No. 438-2025-02440 on August 16, 2025.

33. This suit follows timely administrative steps and seeks relief for federal violations.

34. Defendants' conduct was deliberate and in reckless disregard of Plaintiff's federally protected rights.

## COUNT I — FMLA INTERFERENCE (Against Commonwealth Savers)

35. Plaintiff incorporates paragraphs 1-34.

36. Commonwealth Savers is a covered employer, and Plaintiff was eligible for FMLA family-care leave to care for his spouse with a serious health condition (bipolar disorder with active suicide risk).

37. Plaintiff's 8:46 a.m. June 30, 2025 text provided adequate, timely notice of the need for leave to care for his spouse that day.

38. Defendants interfered with, restrained, and denied the exercise of FMLA rights by terminating Plaintiff within hours of his notice, violating 29 U.S.C. § 2615(a)(1).

39. The violation was willful, as leadership stated they had already "walked through all of this with counsel" before proceeding.

## COUNT II — FMLA RETALIATION (Against Commonwealth Savers)

40. Plaintiff incorporates paragraphs 1-39.

41. Plaintiff engaged in protected activity by requesting family-care leave at 8:46 a.m. on June 30, 2025.

42. Defendants terminated him around 10:00 a.m. the same day, an adverse employment action.

43. The temporal proximity of mere hours establishes causation, in violation of 29 U.S.C. § 2615(a)(2).

## COUNT III — SECTION 504 RETALIATION (Against Commonwealth Savers)

44. Plaintiff incorporates paragraphs 1-43.

45. Plaintiff opposed disability-based discrimination and requested flexibility related to his association with a person with a disability.

46. Commonwealth Savers receives federal financial assistance and was deliberately indifferent to Plaintiff's federally protected rights.

47. Defendants retaliated through escalated in-office demands, categorical denials, and termination, in violation of Section 504, 29 U.S.C. § 794.

## COUNT IV — ADA ASSOCIATIONAL DISCRIMINATION (Prospective Injunctive Relief; Against Morris, Bishop, and Allan in their official capacities)

48. Plaintiff incorporates paragraphs 1-47.

49. Defendants knew of Plaintiff's relationship with a person with a disability and denied equal jobs or benefits because of that association—escalating attendance requirements, denying flexibility, and terminating Plaintiff.

50. Similarly situated employees were treated more favorably for Utah remote work (e.g., Chad Bailey for personal reasons) while Plaintiff's medically necessary request was denied.

51. The foregoing violates 42 U.S.C. § 12112(b)(4). Plaintiff seeks prospective injunctive relief on this Count.

## COUNT V — 42 U.S.C. § 1983 (Equal Protection)

52. Plaintiff incorporates paragraphs 1-51.

53. Acting under color of state law, Defendants treated Plaintiff differently than similarly situated employees without a rational basis and with discriminatory animus following protected disclosures.

54. Comparator evidence includes Chad Bailey's Utah approval for personal reasons, contrasted with the denial to Plaintiff despite medical necessity.

55. The foregoing violates the Fourteenth Amendment's Equal Protection Clause and is actionable under 42 U.S.C. § 1983.

## COUNT VI — 42 U.S.C. § 1983 (Due Process)

56. Plaintiff incorporates paragraphs 1-55.

57. Defendants published or relied upon stigmatizing, false reasons—"job abandonment"—in connection with termination, coupled with the loss of employment (stigma-plus).

58. Defendants failed to provide a name-clearing hearing or adequate process to remedy the reputational deprivation and ongoing harm.

59. The foregoing violates the Fourteenth Amendment's Due Process Clause and is actionable under 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

A. Judgment for Plaintiff on all Counts;

B. Back pay (at Plaintiff's approximate $290,000 annual compensation), with prejudgment interest;

C. Front pay or reinstatement as equity requires;

D. Liquidated damages under the FMLA;

E. Equitable relief including records correction (removing "job abandonment"), neutral reference, and written policy compliance and training;

F. Health coverage via direct-pay COBRA or reimbursement and restoration of lost retirement contributions;

G. Reasonable attorneys' fees and costs where authorized;

H. Any additional equitable relief the Court deems just and proper;

I. Such other relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

/s/ Alexander C. Gray

Alexander C. Gray

150 N Snow Canyon Dr, Unit 19

Ivins, UT 84738

804-335-7579 | zandergray1@gmail.com

September 18, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2025, I will effect service of the foregoing via the

U.S. Marshal pursuant to Fed. R. Civ. P. 4.

Alexander Gray