FILED
10/23/2026
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
ALEXANDER C. GRAY, Plaintiff,
v. Civil Action No. 3:25-cv-00742-RCY
COMMONWEALTH SAVERS PLAN, et al., Defendants.

**MEMORANDUM SUPPORTING LEAVE TO FILE THIRD AMENDED AND SUPPLEMENTAL COMPLAINT**

Gray requests permission to present one complete pleading addressing the employment decisions already before the Court, the ADA claims now supported by the Department of Justice's October 16 notice, and the specified personal FMLA conduct of three existing defendants. He seeks leave to include the identified employer-account allegations and an order providing for responses to the complete authorized pleading.

**I. The proposed amendment responds to the new administrative notice and identifies its changes.**

The operative SAC was filed September 30, 2026 following ECF No. 37. It contains FMLA interference and retaliation, constitutional employment-liberty, and defamation claims. Defendants filed their renewed motion and memorandum October 14. ECF Nos. 40-41. ECF No. 42 gives Gray until November 4 to oppose. Defendants refused consent to the proposed amendment on October 22.

DOJ issued the requested ADA notice on October 16. The proposed TAC presents the notice and the underlying charge history expressly rather than assuming that the existing non-ADA pleading already asserts those claims. It retains the existing counts, adds two distinct employer ADA claims and limited prospective official relief, and specifies personal FMLA claims against Bishop, Allan and Morris based on their own alleged control and acts. The proposed comparison identifies the additions. The personal FMLA theory concerns already-pleaded conduct; it is not described as a newly discovered historical event.

Paragraph 26 also identifies Bishop's May 19 written confirmation of temporary Utah work, its copies to HR and Henry, and the distinction she drew between available work and

stepping away for family obligations. It preserves the week-specific approval and need for a later agreement, as well as the prospective paperwork and approximate return-period statement. That email does not establish that the anticipated certification packet was actually delivered or what its individualized requirements were.

The proposed pleading also adds Bishop's June 23 Draft Renewal email with its critical and favorable contents, and makes focused clarifications within the retained claims. It clarifies that needed psychological support required Gray's nearby presence on June 24-26 while he remained able to work remotely, in contrast to the separate June 30 episode requiring time away from otherwise available remote work. It adds his firsthand observation of the records accessible through Namely and the comparison of CSP's EEOC assertion about the June 23 email with its later litigation account. These new clarifications are expressly identified in the comparison; they are not represented as already filed allegations. The proposal further clarifies the compensation allegations, the February-March performance comparison, the disclosed schedule discretion and periodic-travel proposal, and the constrained context of Gray's responses to the June 27 ultimatum.

Four additional Namely photographs, proposed Exhibit AJ, document the February 2024 goal comments quoted in paragraph 15A and the separate completion and review-writer submission dates stated in paragraph 16. The proposal uses those comments to address Gray's broader leadership and collaboration duties while preserving the comments' requested improvements. It also identifies CSP's account of the February-March performance discussions, uses precise portions of the recorded June 27 sequence, and distinguishes the limited remote transition offer from permanent performance of an unchanged role. These are source-based additions and clarifications, not new causes of action or new defendants.

It expressly preserves the earlier contextual leave-pursuit theory and separate June 30 request, pleads legitimate-request retaliation as an alternative without substituting it for

interference entitlement, explains the alleged practical process deficiency, and connects the existing professional duties and Bishop's own communications to the defamation allegations.

The ADA qualification allegations connect the existing recruitment posting, periodic duties and conditional schedule discretion while retaining the actual office directive. Paragraph 20A compares the particular supplied guidance and telework policy with the asserted categorical manager rule and Allan's qualified June 5 explanation; paragraphs 99I and 99J link that source comparison. It does not allege that no other document or unwritten practice existed. It identifies the same existing Allan defendant as Debra ("Debbie") Allan. These are the disclosed changes in the complete proposal, not a representation that the retained counts are textually unchanged.

The proposed Count I clarifications make the existing notice and certification position explicit: the subsequent-request notice predicate, statutory eligibility, and the requirements and continuing scope of any certification demand must be assessed separately from CSP's "expired" notice label, alongside the pleaded care, communications and resulting loss. These clarifications do not allege the contents of an unavailable packet or an automatic new certification period. The administrative alternative also identifies how the later verified forms specify the disability-linked sequence surrounding the discharge described in the November 18 writing, without assuming that every later theory necessarily relates back.

Count II expressly alleges but-for causation alongside the retained negative-factor and legitimate-request theories, distinguishing the forced exit from the later acceleration. The proposal also clarifies the existing prospective ADA-record request, process-caused constitutional compensation and nominal relief, and actual publication-caused injury as an alternative to legally available presumed defamation damages. The separate FMLA direct-monetary-loss alternative follows the statutory prerequisites; it does not cap the distinct lost-compensation claim at twelve weeks.

The proposed pleading also clarifies the purposes of Gray's June 23 communication and his understanding of the invited FMLA restart, without treating his later account of that understanding as a substitute for what he actually communicated. Paragraphs 60B-60C add a compact, expressly attributed employer-account comparison, and paragraph 86A states its limited continued-account corroboration in Count III. Paragraph 84 limits that incorporation; Count IV remains confined to the separate employment publication. Section III presents the requested federal use and the conditional request for a complete conforming complaint if the Court disallows those allegations. Only one complete proposed TAC accompanies this motion.

Rule 15(a)(2) provides for consent or leave and directs that leave be freely given when justice requires. Foman identifies undue delay, bad faith, repeated failure to cure, undue prejudice and futility as relevant reasons for denying leave, rather than treating the number of the proposed pleading as dispositive. Foman v. Davis, 371 U.S. 178, 182 (1962). The proposed notice allegation also concerns a later event for which Rule 15(d) permits supplementation.

Gray seeks this amendment promptly following the actual notice and before a ruling on the renewed motion. Gray previously disclosed that his intended ADA association-discrimination and retaliation claims awaited completion of the administrative process. ECF No. 35 at 2-3. ECF No. 39 denied expedited discovery as premature; the reviewed record identifies no completed discovery or established amendment cutoff. The proposed new claims concern the same employer, existing individual parties, communications and June 27/30 decisions. The additional statutory issues require a response, but their factual overlap supports consideration in the same action.

The October 16 notice explains the timing of the ADA additions. The personal FMLA theories and historical clarifications concern the employment course already at issue and are not presented as newly discovered employment events. Their basis and changes are disclosed in the comparison. Paragraph 60A also addresses Defendants' October 14 timing account. Gray

seeks consideration of these disclosed changes in one complete pleading at this pre-discovery stage, with Defendants afforded an opportunity to respond to all of it.

**II. The proposed additions identify distinct, supported statutory theories.**

The ADA retaliation claim identifies the substance of Gray's June 23 objection, his factual basis for believing the treatment discriminatory, Bishop's response, and HR's recorded recognition of the discrimination issue. It contrasts the already-known attendance conflict and prior transition discussions with the compulsory departure imposed four days after the objection. Bishop's opening announcement preceded the specific salary-and-benefit terms Gray later proposed in the meeting. The count alternatively alleges that, if CSP had contemplated a future departure before June 23, Gray's opposition caused it to make that course materially more adverse; that alternative does not concede a lawful endpoint or replace the primary forced-exit theory. The count separately challenges the June 30 immediate discharge following Friday's promise of Monday access and outreach despite the known missing resignation email. It preserves the actual oral assent, transition conditions and lack of a communicated email deadline. The June 30 medical-PTO notice remains context, not a newly invented act of ADA opposition.

The association-discrimination claim identifies the benefits CSP had actually provided, including Gray's approved flexible work arrangement and later approved Utah remote work. Qualification rests on Gray's actual director duties and work record, considered alongside the periodic contacts specified in the March memorandum and his proposal for recurring Richmond visits. The count follows the complete work-request, approval and required-PTO sequence, including Bishop's May approval and its availability conditions. It links the restrictions and challenged June decisions through the officials who administered both. Gray seeks equal administration of existing benefits, not a new substantive caregiver-accommodation entitlement. The count preserves the compatibility of nearby care and remote-work capacity on June 24-26 and the separate June 30 need for time away. Earlier

decisions remain background under paragraph 69E. The association and retaliation counts retain separate causation and remedy requirements.

The administrative allegations rest first on the signed April 11 Form 5A and the EEOC's recorded filing date. The Form 5A identifies the employer and challenged events, contains a declaration under penalty of perjury, and states that signing files a charge. The May 26 Form 5 identifies the same employer and June 23, June 27, and June 30 sequence, expressly alleging association discrimination and opposition retaliation. Its later clarification and perfection are addressed under 29 C.F.R. § 1601.12(b). The two proposed counts center on the charged June 27 forced exit and June 30 discharge; the earlier discrete decisions remain background.

The proposed 300-day allegation states its worksharing basis. Both signed forms contain dual-filing language; the perfected Form 5 names the Virginia Office of Civil Rights, and the EEOC's written acknowledgment describes its conditional dual-filing process. Puryear v. County of Roanoke, 214 F.3d 514 (4th Cir. 2000), official pages 7, 9-11, and 13-14, holds that EEOC receipt commences state proceedings under operative mutual-agency and waiver provisions. The proposed pleading invokes that mechanism on information and belief from the identified documents; it does not assert an unverified date of physical transmission. Servicios Latinos, Inc. v. Amado Gomez, No. 2:24-cv-182, ECF No. 111, at 3-5 & n.3 (E.D. Va. filed Jan. 27, 2026), reached an adverse result where the record showed no state receipt or contact and the charge identified no state agency. Its discussion of Puryear must be considered, but Gray's signed dual-filing record and identified state agency differ. The governing worksharing arrangement and any disputed routing evidence remain subjects for focused examination if challenged.

The proposed pleading also preserves the November 18, 2025 writing as a distinct initial-charge alternative. Edelman v. Lynchburg College, 300 F.3d 400, 404-06 & nn.4-8 (4th Cir. 2002), permits a qualifying initial writing to receive later verification despite agency processing failures. Its initial letter expressly sought investigation and its substantive

sufficiency was unchallenged; Gray's request for an appointment or immediate submission instructions presents a different sufficiency question. Hoffman v. Inova Health Care Services, 169 F.4th 207 (4th Cir. 2026), official pages 13-16 & n.7, rejects an unsuccessful attempted amendment against another employer while expressly distinguishing Edelman's earlier-writing/perfection route. Here, the November email and later verified forms concern the same employer and June 30 discharge. The email identified disability and retaliation but did not expressly identify the wife's association or the June 27 act; any related clarification must therefore satisfy § 1601.12(b), rather than be assumed to preserve every theory or earlier decision. The proposed paragraph also preserves the agency's inquiry characterization and no-email-filing warning.

DOJ's October 16 notice supplies the completed notice event. It is not offered as a merits ruling or an adjudication of charge timeliness, scope, or immunity. Gray seeks leave promptly through a complete proposed pleading, while preserving the existing opposition obligation. The notice and these administrative alternatives do not themselves make the proposed TAC operative.

Bishop's personal FMLA allegations rest on her actual control of Gray's work/leave arrangements, the June 27 choice, the Friday undertaking, and the June 30 letter. Allan's allegations rest on her own administration and June 27 decision conduct; they do not attribute Bishop's Monday notice or discharge act to her. Ainsworth held allegations of actual control sufficient to plead public officials as FMLA employers, while separately testing the elements of each claim. Ainsworth v. Loudon County School Board, 851 F. Supp. 2d 963, 972-75 (E.D. Va. 2012). Section 2611(4)(A)(ii)(I) supplies the statutory basis. Morris's inclusion concerns her own June 27 participation. The proposed pleading identifies her prior medical knowledge, her actual involvement and delegated authority over the work-location decision, her active defense of that position during the assembled decisionmakers' meeting, and her participation in the ensuing transition-benefits discussion. Those facts support the pleaded inference that she

approved the June 27 disposition with knowledge of the care-related PTO context. The proposal does not attribute Bishop's June 30 notice or acceleration decision to Morris, or rely on Morris's title alone.

Lizzi v. Alexander, 255 F.3d 128 (4th Cir. 2001), must be distinguished rather than treated as wholly displaced. Lizzi treated the pleaded supervisory claims as an action against the agency and expressly rejected reliance on an individual-capacity label alone. Id., official opinion at 13-15. Its substantive inquiry remains relevant: Martin v. Wood, 772 F.3d 192, 195-96 (4th Cir. 2014), and Cunningham v. Lester, 990 F.3d 361, official pages 6-10 (4th Cir. 2021), applied it where the underlying FLSA and TCPA claims remained barred by sovereign immunity. Gray's claims enforce spouse-care rights for which Nevada Department of Human Resources v. Hibbs, 538 U.S. 721, 725-26, 740 (2003), upheld Congress's abrogation, and he separately maintains that CSP is not an arm of the Commonwealth. Those grounds address the underlying sovereign-immunity premise. Section 2611 and each person's pleaded control and conduct separately support the alleged statutory responsibility for the loss her violation caused. The actual-control analysis in Ainsworth and the later individual-claim posture in Mook support considering those claims without treating a capacity label as sufficient. Statutory employer status and possible personal qualified immunity remain distinct. Lizzi's footnote 1 expressly reserved the private-employer individual-liability question, not every claim against an otherwise suable employer.

The personal amendment does not eliminate the existing entitlement, notice, certification, causation or loss requirements. Nor is qualified immunity simply assumed to apply: in an FMLA interference claim, Mook remanded the threshold question whether the statute incorporates that defense. Mook v. Hall, No. 25-1677, slip op. at 16-19 (4th Cir. Aug. 4, 2026). Its unresolved question and its separate adverse clearly-established-right analysis require attention to the actual claim and conduct; they do not establish automatic personal immunity or automatic liability here.

These claims seek relief only for the loss each violation caused. ADA retaliation seeks the available equitable remedies, with association discrimination's compensatory route separately pleaded. The governmental punitive exclusion is respected. Personal FMLA relief does not duplicate CSP's payment of the same injury. The existing non-arm allegations remain necessary to the requested ADA monetary relief. The alternative official request is limited to prospective record correction or annotation addressing a proved ongoing violation; it is not an equivalent monetary fallback. Gray principally seeks monetary relief and appropriate front pay if warranted, and does not presently seek reinstatement. The separate constitutional process and record remedies remain.

**III. The employer-account allegations support the proposed federal claims.**

Paragraphs 60B-60C identify CSP's August 2025 employer response to the Virginia Employment Commission. Asked what Gray did to comply with the return-to-office warning, CSP answered, “Did not return, called out Tuesday-Thursday.” It identified June 24-26 as subsequent attendance occurrences and reported no improvement after the warnings. Read with Bishop's prescribed PTO course, the alleged care and notice, and the June 27 discussion, this account corroborates Gray's allegation that the particular care absences counted against him in the forced exit. Otherwise protected FMLA leave cannot be used negatively in employment decisions. 29 C.F.R. § 825.220(c). The existing allegations separately address protection, certification, legitimate requests and each defendant's conduct.

The warning sequence also supports the ADA-retaliation inference when compared with Gray's June 23 opposition and Bishop's response. Paragraph 60B expressly identifies, on information and belief, Bishop's response and associated text as the referent of the later warning entry; Gray alleges retrospective disciplinary framing of that response, not that the form literally labels his own complaint misconduct. The additional missed-June-30-meeting account permits comparison with the letter, the EEOC missing-writing explanation and the June 23 timing position in ECF No. 41. Bishop's Friday promise of Monday access and

outreach after acknowledging the missing writing makes that comparison concrete. Gray's allegation that no meeting invitation was communicated is distinct from CSP's later assertion that a missed meeting preceded discharge.

For Count III, paragraph 86A uses the later written account to corroborate continued maintenance of the disputed abandonment reason, considered with the letter's formal issuance, HR involvement and absence of a communicated correction. Paragraphs 62 and 86 independently support the alleged likelihood of employment-reference disclosure. Paragraph 84 limits incorporation to that corroborative purpose; VEC transmission is not the asserted constitutional publication. Count IV remains based on the June 30 letter. These additions introduce neither the deputy's determination, a benefits-loss item nor a new August retaliation claim.

The statutory source issue is addressed openly. Defendants previously quoted Virginia Code § 60.2-623(B) in ECF No. 24 at 5. For these federal-claim allegations, Gray invokes Rule 501 and Virmani's governing federal privilege framework, which applies in mixed federal/state cases. Virmani v. Novant Health Inc., 259 F.3d 284 (4th Cir. 2001), slip op. at 5 n.3, 6-7 n.4. Cartledge rejects automatic recognition of a state collateral-use restriction and requires consideration of the competing federal and state interests. United States v. Cartledge, 928 F.2d 93, 95-97 (4th Cir. 1991). Their peer-review discovery and criminal settings differ from this case; they supply the framework rather than a holding about this response.

Griffin provides an actual unemployment-account application: the court rejected a state privilege objection and considered the employer's letter and testimony in assessing motive and decision timing. NLRB v. Griffin, No. 06-1424, slip op. at 9 n.2, 9-11 (4th Cir. June 20, 2007) (unpublished). Its North Carolina/NLRB setting limits its reach, but its reasoning supports consideration of an employer's particular explanation of the challenged conduct.

Other courts have declined to recognize an unemployment-records privilege when applying federal privilege law. See EEOC v. Illinois Department of Employment Security, 995 F.2d

106, 107-09 (7th Cir. 1993) (reversing refusal to enforce an EEOC subpoena); Gallardo v. Board of County Commissioners, 881 F. Supp. 525, 529 (D. Kan. 1995) (ordering unemployment-record discovery in federal civil-rights litigation). Those decisions concern compelled disclosure involving other states' confidentiality statutes; they support the federal inquiry rather than decide the proposed pleading use under Virginia law.

The adverse authorities require a focused answer. Abousaidi struck employer-VEC and determination allegations at pleading, without analyzing Rule 501. Abousaidi v. Mattress Discounters Corp., No. 1:05cv1142, 2005 WL 3797366, slip op. at 7-8, § III.B (E.D. Va. Dec. 8, 2005). Harris likewise disregarded VEC material in an ADA action, and Hickey excluded VEC-determination arguments while allowing independent allegations to proceed.[1]

[1] Harris v. Reston Hospital Center, LLC, 523 F. App'x 938 (4th Cir. 2013), slip op. at 16 n.7 (unpublished); Hickey v. Bon Secours Richmond Health System, No. 3:12cv691, ECF No. 15, at 9-10, 15 (E.D. Va. Dec. 19, 2012). Neither opinion analyzes the Rule 501 balance advanced here.

Hartsell performed a federal balance and excluded cumulative unemployment-hearing impeachment after extensive discovery. Hartsell v. Duplex Products, Inc., 895 F. Supp. 100, 102-03 (W.D.N.C. 1995). Virginia has a legitimate interest in candid reporting and efficient administration of unemployment benefits, but Gray seeks neither review of the Commission's decision nor liability for making the submission. The independent communications support the claims without this account; they do not reproduce CSP's own classification of the identified care absences as failed compliance or its additional missed-meeting explanation, so independent pleading sufficiency does not make that evidence cumulative. For those limited federal purposes, the balance favors considering the employer's account, with court-directed handling of the complete source and protection of unrelated confidential information, while preserving separate questions of trial admissibility.

Gray seeks leave to plead these allegations, with a focused opportunity to address any source objection raised against the amendment or identified by the Court. The Court need not decide all later evidentiary uses to determine leave. If complete-source examination is necessary, Gray requests an appropriate submission procedure with Defendants afforded access and an opportunity to respond. The form is preserved and is not attached to the proposed TAC; source handling remains subject to the Court's directions. Trial admissibility remains for the appropriate record.

The proposed claims also rest on the independent communications, conduct and allegations identified above. If the Court disallows the employer-account allegations, Gray requests a ruling identifying the affected material and leave to proceed with the otherwise-supported amendment after removing paragraphs 60B, 60C and 86A and their dependent references. He requests an order directing submission of a complete conforming complaint, rather than denial of the remaining amendment. No second complete complaint accompanies the motion. This conditional request preserves the independent grounds for relief without conceding the source objection or presuming that an unapproved version is operative.

**IV. The authorized TAC should receive an ordinary response.**

If leave is granted and the complete authorized TAC becomes operative, it will supersede the SAC. See Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455-56 (4th Cir. 2017). Gray requests that ECF No. 40 then be denied without prejudice as moot and that Defendants answer or otherwise respond under Rule 15(a)(3). Plaintiff does not oppose appropriate reuse of existing arguments in a response directed to the authorized TAC. Briefing on any dismissal motion should proceed under the applicable rules and further order or notice. The pending leave motion itself changes neither the operative pleading nor the November 4 opposition obligation.

**CONCLUSION**

Gray requests leave to file the one complete proposed TAC and its identified exhibits, with an express disposition of ECF No. 40 when the complete authorized TAC becomes operative and responses under Rule 15(a)(3). If leave is granted to file that complete proposal, he requests that it be deemed filed as of its actual tender with the motion, without prejudice to any applicable Rule 15(c) relation-back argument. That requested treatment does not make the proposal operative before leave is granted. If the Court disallows only the specified employer-account allegations, he requests leave to submit a complete complaint conforming to the identified exclusions and an express determination of its filing date. The conditional request concerns the otherwise-supported amendment; it does not tender or presume the filing of a separate alternative version. The November 4 opposition obligation remains unless the Court changes it.

Respectfully submitted,

Alexander C. Gray, Plaintiff pro se
150 N. Snow Canyon Dr., Unit 19
Ivins, UT 84738
(804) 335-7579
zandergray1@gmail.com
Date: 10/22/2026

**CERTIFICATION**

I declare under penalty of perjury that:
(1) No attorney has prepared, or assisted in the preparation of this document.
Alexander C. Gray
Name of Pro Se Party (Print or Type)

Signature of Pro Se Party
Executed on: 10/22/2026