FILED
11/3/2026
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALEXANDER C. GRAY,
Plaintiff,
v. Civil Action No. 3:25-cv-00742-RCY
COMMONWEALTH SAVERS PLAN, et al.,
Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Alexander C. Gray opposes dismissal of his Second Amended Complaint (SAC), alleging Commonwealth Savers Plan (CSP) forced him out for using care leave directed by its Chief Operations Officer, Carolyn Bishop. ECF Nos. 38, 40. She approved office-day PTO "to be with your wife" and recognized Monday/Friday remote work. Gray sought to keep working. On June 27, management demanded resignation or termination and offered remote transition work "so we're not having to play this PTO thing Tuesday, Wednesday, Thursday." Gray chose continued work under that ultimatum, reserving his rights. SAC ¶¶ 28, 35, 40, 44-51.

June 30 brought a separate wrong. On Friday evening, after noting that the resignation email had not arrived, Bishop told Gray his access would be restored Monday morning and CSP would "reach out then." At 8:46 a.m. Monday, Gray requested PTO "for family medical reasons." At 12:13 p.m., Bishop terminated him immediately for "job abandonment." SAC ¶¶ 52-57. Counts I and II challenge both the forced exit and the acceleration. Count III challenges the false charge's likely disclosure to prospective employers without meaningful review; Count IV challenges Bishop's knowing or reckless publication to management. SAC ¶¶ 61-66, 84-99.

Defendants say Gray "never alleges" a leave request despite paragraphs 54, 72 and 78. Their missing-email theory ignores the lack of a resignation-email deadline and Bishop's promise after acknowledging the omission; their Utah-work account ignores June 13's recognized Monday/Friday work. ECF No. 41 (Mem.) 6-10; SAC ¶ 48; Exs. B, F at 12, 29. The complete pleaded account states each claim.

**I. The complaint alleges directed care leave, continued work and the challenged discharge.**

The Court granted leave for the SAC, finding that "at least one of Plaintiff's claims survives 12(b)(6) scrutiny," and denied earlier motions as moot. ECF No. 37 at 2-3. Gray's motion for leave to file a Third Amended and Supplemental Complaint (TAC), ECF No. 43, remains pending. Exhibit pages refer to ECF No. 38-1.

Gray was CSP's Director of Application Development, supervising two teams with delivery, security and continuity responsibilities. He alleges the required tenure, hours, worksite and available family-care entitlement. His wife's chronic serious health condition required continuing treatment and care during recurring acute episodes. The alleged June 24-26 care was incompatible with required Richmond attendance; June 30 involved a separate acute episode requiring a day away from otherwise available remote work. SAC ¶¶ 5, 12, 22, 40, 53, 67.

Gray worked fully remotely for nearly three years, then under an approved flexible work arrangement. CSP imposed his three-day office directive effective April 1, 2025. The SAC acknowledges it but disputes its asserted necessity and uniformity. CSP approved temporary Utah work in April and May; proposed recurring Richmond travel remained subject to approval. SAC ¶¶ 14-30, 33-34; ECF No. 38-1 at 39-40, 66, 72-73, 167-68 (Exs. G, H, AB).

The February review rated four goals On Target and one Behind Schedule, credited leadership and delivery accomplishments, and requested improvements in camera use, engagement, metrics, documentation and communications. The SAC alleges full productivity, all deadlines met and no complaints during approved April and May Utah work. SAC ¶¶ 16-17, 27.

On May 27, Gray told Bishop he could not travel weekly; she directed PTO for required office days he could not attend. June 5 discussions addressed intermittent FMLA leave, his preference to work, and possible transition without agreement or an end date. SAC ¶¶ 28, 31-34. Bishop's June 13 email approved June 17-18 PTO "to be with your wife" and

recognized Monday/Friday remote work. Defendants quote her restrictions but omit that express approval of time off to care for his wife. Mem. 6-7; Ex. B at 12-13. Bishop also asserted expiration of the earlier "FMLA eligibility notice" for nonreturn of "paperwork" and invited Gray to restart the FMLA process through Geis or HR. SAC ¶¶ 35-36.

On June 23, Gray challenged disability-linked unequal treatment, shifting explanations and increased restrictions following disclosure of his wife's condition. He requested a meeting to resolve the dispute and emphasized that he wanted to continue working productively, not take extended unpaid leave. His email described the medical circumstances, directed PTO and its approaching exhaustion. It also proposed transition arrangements and an orderly handover as part of seeking a mutually acceptable resolution; he neither resigned nor set an end date. Bishop copied HR and agreed to meet. Paragraph 40 alleges necessary June 24-26 care. SAC ¶¶ 37-41; Exs. C, Z at 15-17, 155.

The June 27 meeting to address Gray's concerns became an ultimatum to resign or be fired. Gray denied abandonment and said, "I'm trying to save my position." Bishop refused weekend consideration and threatened termination at the meeting's end. Faced with those alternatives, Gray chose continued work for the offered month, expressly reserving his rights. The SAC alleges an unlawful, involuntary departure. He accepted communication, availability and deliverable conditions, including possible early termination; management proposed August 1 for "two months of health insurance," and Gray agreed that date worked. SAC ¶¶ 41-51; Ex. H at 65-80. Management requested a resignation email, contemplated Bishop's written acceptance and Monday planning; neither writing occurred. Bishop's 5:09 p.m. text nevertheless said his access would be restored Monday morning and CSP would "reach out then." SAC ¶ 52; Ex. F at 29.

An unforeseen acute episode required Gray's care and a day away on Monday, ordinarily a remote-work day. At 8:46 a.m. Eastern he texted Bishop, "I need to take PTO today for family medical reasons," through the instructed and accepted channel. He alleges her receipt before

discharge. Before the 12:13 p.m. letter he received no inquiry, clarification request, leave determination or certification request. SAC ¶¶ 29, 53-56. Bishop immediately discharged him for "job abandonment," citing his Utah move and inability to meet office requirements. The letter limited health coverage to "through today, June 30, 2025," the discharge day. It copied Morris, Geis and General Counsel McGee. No particular Monday meeting time or invitation had been communicated. SAC ¶¶ 57-58; Ex. E at 22-24.

**II. The Court credits the complaint, not Defendants' characterization of its exhibits.**

Defendants' categorical exhibit-prevails rule omits the document-purpose inquiry. Mem. 8. Attaching an allegedly libelous writing does not adopt its accusation as true. Goines v. Valley Community Services Board, 822 F.3d 159, 166-69 (4th Cir. 2016). Acknowledging the March directive likewise does not concede its disputed availability and remote-leadership accusations. SAC ¶ 17; Ex. X, pp. 146-149. The transcript does not convert management's disputed accusation or Defendants' factual and causal interpretations into admissions.

The Court credits well-pleaded factual falsity while independently assessing the complete statement’s defamatory meaning. Lokhova v. Halper, 995 F.3d 134, 145-46 (4th Cir. 2021). Gray alleges a professional-desertion implication and Bishop’s contrary administered course. SAC ¶¶ 61, 85, 94-97. Neither the employer’s label nor a bare denial decides both questions.

Barbour requires considering timing, intervening statements and inconsistencies together, without importing completed McDonnell Douglas proof into pleading. Barbour v. Garland, 105 F.4th 579, 589-90, 593-600 (4th Cir. 2024). Reasonable inferences favor Gray; Bishop's directions and changed treatment of already-known information supply more than timing alone.

An affirmative defense supports dismissal only when its necessary facts clearly appear on the complaint’s face, considering the pleaded response to that defense. Goodman v. Praxair, Inc., 494 F.3d 458, 464-66 (4th Cir. 2007) (en banc).

**III. Counts I and II state FMLA interference and retaliation claims.**

Counts I and II challenge the June 27 forced exit and June 30 discharge or acceleration. Gray alleges statutory eligibility, available leave and his wife's serious health condition. SAC ¶¶ 22, 67. Paragraph 40 alleges that his wife needed his June 24-26 care and psychological support. Richmond attendance meant about a travel day each way and a week away. He could not provide that immediate care from across the country; Bishop had refused office-day remote work. SAC ¶¶ 35, 40, 42. When he described that problem, Allan urged PTO and hoped he would "apply for FML." Ex. G at 58 (27:39-27:55). The FMLA protects medically necessary intermittent spouse care, including psychological care. 29 U.S.C. § 2612(a)(1)(C), (b)(1); 29 C.F.R. §§ 825.124(a)-(c), 825.202(b). See Scamihorn v. General Truck Drivers, 282 F.3d 1078, 1087-88 (9th Cir. 2002) (triable needed-care issue on daily conversations, household help and continuing presence for a severely depressed father, with supporting medical testimony). June 30's unforeseen acute episode instead required a day away from available remote work. SAC ¶¶ 53-54. Gray claims protected care absence, not permanent remote work; lawful office requirements cannot justify using protected leave against him. 29 C.F.R. § 825.220(c).

**A. Gray sufficiently notified CSP of the care needs.**

Defendants' assertion that Gray "never alleges in his Second Amended Complaint that he requested FMLA leave" is incorrect and materially mischaracterizes the pleading. Mem. 9. Paragraph 54 expressly alleges his June 30 medical-PTO request; paragraph 72 alleges adequate contextual notice; paragraph 78 alleges that he "exercised or attempted to exercise family-care leave rights" through June 24-26 and "the separate June 30 request." Defendants themselves discuss that request, describe PTO "for his family medical situation," and place the June 30 text before termination "later that day." Mem. 5, 8, 10-11. They separately assert: "Plaintiff does not allege that he took Commonwealth Savers up on that offer, and he did not." Mem. 9-10. That disputed interpretation of the restart communications cannot erase the

pleaded requests or establish rejection of later protection. Goines, 822 F.3d at 166-70. Notice, entitlement, any applicable certification requirement and each claim's remaining elements require separate assessment.

An employee must provide information indicating that FMLA may apply, not select the correct legal label. 29 C.F.R. § 825.303(b). Dotson rejected a formal-invocation defense even though the employee used accrued vacation and did not pursue an additional HR referral. He had already consulted HR and presented evidence of misinformation. Applying the same notice rules to interference and retaliation, the court refused to let the employer use its own failure to identify protected leave to escape liability. Dotson v. Pfizer, Inc., 558 F.3d 284, 291, 293-96 (4th Cir. 2009). Hannah likewise held premature a qualifying-condition objection left unresolved by the employer's own failure to make the required inquiry. Hannah P. v. Coats, 916 F.3d 327, 345-47 (4th Cir. 2019). Actual accepted reporting practice matters in applying usual notice procedures. Roberts v. Gestamp West Virginia, LLC, 45 F.4th 726, 733-38 (4th Cir. 2022). A distinct continuing certification requirement receives separate analysis below.

On June 5, Gray said, "I don't need leave. That's not really what I need," explaining that unpaid leave would end with a requirement to "be back here." Ex. G at 44 (16:07-16:41). Allan later explained that FMLA approval "Doesn't mean you take 12 weeks all the time." Gray responded, "Like a day," said he understood, and added, "I know FMLA protects everything," while calling it a "less than ideal scenario." Allan replied, "All of this is a less than ideal scenario." Id. at 51 (22:37-23:13). When he described flying while his wife needed him and said, "It doesn't work with somebody suicidal," Allan answered, "It doesn't. And those are the days I would hope you would just take the PTO," followed by, "And so I would hope you would apply for FML." Id. at 58 (27:39-27:55); SAC ¶¶ 31-32. June 13's restart invitation followed. SAC ¶¶ 35-36; Ex. B at 12-13. Preferring work did not surrender otherwise available protection when later necessary care required absence. SAC ¶ 75.

His June 23 objection to "extended unpaid time" as a solution to permanent relocation accompanied a description of the Tuesday-Thursday PTO course he was using; it did not renounce protection for particular care absences. Ex. C, p. 16. Paid PTO may run concurrently with FMLA leave; prospective FMLA rights cannot be waived. 29 U.S.C. § 2612(d)(2); 29 C.F.R. §§ 825.207(a), 825.220(d). June 30's request was specific: "I need to take PTO today for family medical reasons." SAC ¶ 54. Contrary to the memorandum's "identical" characterization, June 13 conditionally sought PTO if office-day remote work was refused; June 30 required absence from otherwise available Monday remote work for unforeseen care. Mem. 11; SAC ¶¶ 35, 53-54; Ex. B, pp. 12-13.

Defendants' presentation of section 825.303(b) is materially misleading. They quote its first-time-request sentence and declare that earlier PTO defeats the rule. Mem. 11. The next sentence applies to a reason "for which the employer has previously provided the employee FMLA-protected leave." CSP insists its earlier PTO was unprotected; that account does not establish the omitted predicate. Even if the heightened rule applied, it permits reference to the qualifying reason or the need for FMLA leave. The June 23 email identified his wife's mental-health treatment and directed PTO course, and Bishop's reply carried it to HR. Read with the known care circumstances and upcoming-absence text, it supplied notice for June 24-26. SAC ¶¶ 37-41; Exs. C, Z, pp. 15-17, 155; see 29 C.F.R. § 825.302(c). Section 825.300(b)(1) generally requires no repeated same-reason eligibility notice within twelve months. But an eligibility notice is not previously provided protected leave; later notice, necessary inquiry and any valid continuing certification demand remain distinct.

Gray also alleges notice through the direct-text method management instructed and accepted, against Bishop's known spouse-specific medical context, including her May 18 offer of PTO "[g]iven the need to be with her." SAC ¶¶ 26, 29, 54, 72; Ex. M at 92. The June 13 HR reference does not itself establish an exclusive initiation rule overriding that practice. See Roberts, 45 F.4th at 733-38. Section 825.303(b) calls for informal inquiry when additional

information is needed. Gray received no inquiry or clarification request between his morning notice and discharge. SAC ¶ 55.

Defendants' foreseeability footnote similarly equates knowledge of a chronic condition with advance knowledge of this episode. Mem. 12 n.3. Section 825.302(a) accounts for unknown timing, changed circumstances and medical emergencies; section 825.303(a) requires notice as soon as practicable when timing is unforeseeable. Paragraphs 53 and 72 allege an unforeseen acute episode and prompt notice. Section 825.304(b) expressly requires both the need for leave and its approximate date to have been clearly foreseeable thirty days earlier. The condition's duration does not establish that omitted requirement.

The election cases do not make Gray's earlier preference dispositive of these later absences. Escriba sustained a jury's finding of a particular election after repeated clarification, substantial FMLA experience and an unreported extension; it distinguished declining present exercise from permanently relinquishing future rights. Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1240-46 (9th Cir. 2014); see 29 C.F.R. § 825.220(d). DOL later expressly disagreed with Escriba's elective-delay rule. WHD Opinion Letter FMLA2019-1-A, at 2 n.3 (Mar. 14, 2019). That agency position does not resolve any valid certification default. Gravel granted summary judgment where an employee administering FMLA expressly proposed flexibility instead, received every requested adjustment, and later invoked leave after a timekeeping investigation began; independent falsification evidence also defeated the claim. Gravel v. Costco Wholesale Corp., 230 F. Supp. 3d 430, 436-39 (E.D. Pa. 2017). Amstutz likewise involved summary judgment, prior FMLA experience and an actual form offering FMLA for the disputed absence. Amstutz v. Liberty Center Board of Education, 127 F. Supp. 3d 846, 854 (N.D. Ohio 2015). Those particular election records do not turn a PTO label or rejection of extended unpaid leave into a conclusive election against protection for the later care needs and renewed notice alleged here.

**B. Defendants have not established a proper, applicable certification request.**

Defendants' certification defense rests on an unestablished premise. They relabel Bishop's "eligibility notice" and "paperwork" as "FMLA certification paperwork," then treat nonreturn as dispositive. Mem. 11; SAC ¶¶ 31, 36; Ex. B at 12. The original paperwork is absent from the SAC exhibits. A proper request, ordinarily at least fifteen calendar days to respond, and notice of the consequences of noncompliance are distinct requirements. 29 C.F.R. §§ 825.300(c)(1)(ii), 825.305(a)-(d), 825.313(a)-(b). Bishop's statement that the absences were unprotected gives her classification; it does not establish a proper request, the required notices or continuing application to the disputed absences. Attaching her email does not make that classification conclusive. Goines, 822 F.3d at 166-70. Counsel's characterization cannot supply those missing premises.

Section 825.313(b)'s rule that leave is "not FMLA leave" if the employee "never produces the certification" presupposes a proper request applicable to that leave. Barker applies that prerequisite despite asserted total nonproduction for disputed days. Barker v. Genesys PHO, LLC, 46 F. Supp. 3d 717, 726-29, 731-32 & n.8 (E.D. Mich. 2014). Wallace separately distinguishes receipt of forms from legally sufficient consequences information. Wallace v. FedEx Corp., 764 F.3d 571, 587-91 (6th Cir. 2014). Gray relies on his June 23 and June 30 communications as pursuit of the invited FMLA process, not automatic waiver or a new deadline.

Separately, SAC paragraph 78 alleges attempted exercise. Gray argues that the communications and adverse actions support retaliation for legitimate requests themselves, even if a valid earlier demand barred coverage of an absence. Section 2615(a)(1) and 29 C.F.R. § 825.220(c) protect attempted exercise. Milman protects legitimate pursuit within the FMLA's procedural framework without requiring ultimate entitlement; Chapman preserves a request theory even when leave was taken, while requiring punishment of the request itself rather than merely an unprotected absence. Milman v. Fieger & Fieger, P.C., 58 F.4th 860 (6th Cir. 2023),

slip op. at 11-14; Chapman v. Brentlinger Enterprises, 124 F.4th 382 (6th Cir. 2024), slip op. at 21-22 & n.7. The June 23 exchange reached Geis, Bishop's named restart contact, and described continuing care, directed PTO and its approaching exhaustion. The June 30 text separately requested that day's leave through the accepted channel. SAC ¶¶ 35-41, 53-55; Exs. B, C, pp. 12, 15-17. Those contextual communications plausibly sought family-care protection before the respective actions. Gray alleges punishment of that pursuit through the forced exit and changed Monday response following the new notice. SAC ¶¶ 44, 52-57, 78-83.

**C. Count I identifies denied protections and resulting loss.**

Count I alleges impairment of substantive leave protections through two employment actions. Immediate June 30 discharge denied protection of the current necessary care absence and associated leave and restoration rights. Separately, the June 27 ultimatum restrained continued qualifying leave and compelled departure because CSP treated care absences as unprotected attendance. SAC ¶¶ 36, 40, 53-59, 69, 71-75. Classification and inquiry failures explain that impairment; the claim seeks the compensation and benefits lost through the forced exit and immediate discharge. Payment for some days does not establish receipt of continuing leave and employment protections. SAC ¶¶ 68-69, 74, 76.

Gray must establish entitlement and prejudice caused by an FMLA violation. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89-91 (2002); Hannah P. v. Haines, 80 F.4th 236 (4th Cir. 2023), slip op. at 15-22. The independent-discharge rule also requires an employer showing: section 825.216(a) places on the employer a burden to come forward with evidence that the employee would not otherwise have remained employed when restoration is sought. Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 549-50 (4th Cir. 2006). Haines preserves the employee's initial causal showing and ultimate burden of causal harm while requiring the employer's same-decision showing after that initial showing. Slip op. at 15-17. Here CSP allegedly treated qualifying care as unprotected attendance and used it to end employment,

causing compensation and benefit loss. SAC ¶¶ 69, 72-76. The disputed chronology below supports that connection; ordinary interference requires no additional retaliatory intent.

The June 27 endpoint is itself challenged as employer-imposed. Management's departure announcement and month-long notice proposal preceded Gray's larger severance proposal, which Allan rejected. Gray agreed to continue for the month with rights reserved only after Bishop refused weekend consideration and required resignation or termination at the meeting's end. Allan's statement that he need not "accept" left immediate termination as the alternative. SAC ¶¶ 42, 45-51; Ex. H at 65-66, 74-80. Paragraph 51 alleges involuntariness; paragraph 69 seeks loss from that allegedly unlawful forced endpoint and, alternatively, June 30 acceleration. Neither a lawful August 1 cutoff nor duplicate or noncausal recovery is assumed. SAC ¶¶ 69, 76, 83.

**D. The chronology supports both retaliation theories.**

June 30. Despite acknowledging the missing resignation email "as agreed," Bishop's Friday text promised to restore access and reach out Monday. SAC ¶ 52; Ex. F at 29. SAC paragraph 48 corrects his Board letter: he selected the month under the meeting ultimatum; no deadline was communicated for the later resignation email he agreed to send. SAC ¶¶ 48, 51-52; Exs. H, R at 76-80, 109. His 8:46 a.m. medical notice preceded the 12:13 p.m. immediate discharge and same-day health-coverage cutoff, despite Friday's promise after the known omission. SAC ¶¶ 49, 53-57, 68, 80.

Defendants say discharge followed "just as Plaintiff had been told would happen." Mem. 8. Bishop reserved early termination "if anything goes awry," but then promised Monday access after learning the writing was missing. Ex. H at 76-77 (20:36-21:10); Ex. F at 29. That promise prevents treating immediate discharge as an established automatic consequence. The letter cited no conduct after the meeting and omitted the missing email; the later EEOC account identified that omission after oral acceptance as the trigger. SAC ¶ 60; Exs. E, W at 24,

142-43. Barbour supports considering changed treatment of known adverse information, not timing alone, without demanding completed pretext proof. Barbour, 105 F.4th at 590, 595-600.

An employer may proceed along lines contemplated before protected activity; the plan need not be final or irrevocable. Clark County School District v. Breeden, 532 U.S. 268, 272 (2001); Fry v. Rand Construction Corp., 964 F.3d 239, 247-48 (4th Cir. 2020). Fry affirmed post-verdict judgment as a matter of law for the employer on a trial record of performance concerns and contemplated termination predating leave. Here the pleaded Friday commitment intervened after the known omission and before Monday's care notice. Eventual departure and acceleration require separate analysis: Lee rejected the original-removal theory but vacated causation-based summary judgment on acceleration because conflicting accounts and the employer's explanation left timing and reason disputed. Lee v. West Virginia University Medical Corp., 181 F.4th 424, 437-40 (4th Cir. 2026). The question includes why CSP acted when it did. Guessous v. Fairview Property Investments, LLC, 828 F.3d 208, 216-19 (4th Cir. 2016). The conditional month and missing writing remain relevant, but do not resolve the alleged change after the later notice. SAC ¶¶ 47-57.

June 27. Defendants move their asserted cutoff from June 27 to June 23 and invoke the 2024 relocation refusals to say Gray "should not have been surprised." Mem. 6 n.2, 14-15 & n.4. Those refusals left him employed; CSP acknowledges Henry's "just one day per week" schedule in 2024. Ex. W at 138. Their own memorandum places CSP's knowledge of his wife's Utah move in May and Bishop's refusal of further Utah remote work in late May. Mem. 5-6. The SAC supplies the decisive detail: Bishop knew May 27 that Gray could not travel weekly, yet directed office-day PTO; Allan said June 5, "We're not terminating your employment"; June 13 reaffirmed that course while recognizing Monday/Friday remote work. SAC ¶¶ 28, 33-35; Ex. B at 12; Ex. G at 46, 53. The known obstacle had produced continued employment, not termination.

Defendants say termination "was solidified based on the events of June 23." Mem. 15. That interpretation is not an established decision date in the SAC; counsel cannot resolve the disputed chronology against Gray. Those communications described continuing medical needs, directed PTO and approaching exhaustion, alongside his objection to disability-linked treatment. Bishop's reply reached HR; his text answered her objection to the coming care absences. Allan linked the June 27 gathering of "all the decision makers" to Gray's resolution request; Bishop opened with his text. SAC ¶¶ 37-42; Exs. C, Z at 15-17, 155; Ex. H at 65. Defendants' asserted cutoff follows those communications; predating leave days does not establish predating notice or anticipated continuing need. Creekmore applied Rule 12's futility standard to undisputedly qualifying leave and allowed an inference that discipline was planned in anticipation of future FMLA use. Creekmore v. Truist Bank, No. 2:24-cv-209, ECF No. 31, at 14-18 (E.D. Va. Nov. 21, 2024).

Allan called the move Gray's "personal choice" while offering to "let you have a notice period and work remotely in your notice period so we're not having to play this PTO thing Tuesday, Wednesday, Thursday." SAC ¶¶ 44, 79; Ex. H at 73 (14:23-15:12). The proposed exit arrangement permitted remote transition work on the same weekdays Gray had been directed to cover with PTO. Id. at 75. Although transition duties would change, the directed care leave, forced choice and explanation together support adverse use of that continuing absence pattern. Bunch allowed retaliation to proceed where a supervisor cited check-in, return-notice and training issues during leave despite a competing misconduct account. Bunch v. Powell, No. 1:15CV47, ECF No. 24, at 3-4, 7-9 (W.D. Va. Dec. 17, 2015). Protected leave was undisputed there; Gray's notice and certification predicates remain as addressed above. Competing relocation and performance explanations do not eliminate his pleaded negative-factor inference. SAC ¶¶ 40, 44, 73, 79; 29 C.F.R. § 825.220(c).

Knowledge. Gray alleges notice to Bishop, his supervisor and the official who issued the letter, through the instructed and accepted channel. SAC ¶¶ 11, 29, 37-39, 54, 57, 80. The

saved message shows delivery at 8:46 a.m. Eastern; the letter's PDF records creation at 11:50 a.m., and it was sent at 12:13 p.m. SAC ¶¶ 54, 56-57; ECF No. 38-1 at 22-24, 101, 103 (Exs. E, P, Q). Delivery is not proof of when she read it, but the interval, accepted channel and known context support the pleaded receipt inference. Even under but-for analysis, the location dispute does not resolve why CSP acted when and as it did. Counts I and II's two periods require separate assessment.

**IV. Count III states an employment-liberty claim.**

Count III challenges a substantially false, seriously stigmatizing reason for discharge, its likely communication to prospective employers, and the denial of meaningful process to contest it. SAC ¶¶ 61-66, 84-92. Even an at-will employee may challenge restrictions on future employment caused by the government's false explanation for an otherwise permissible discharge. Cannon v. Village of Bald Head Island, 891 F.3d 489, 501-02 (4th Cir. 2018).

**A. The charge plausibly imputes serious professional desertion.**

The letter terminates Gray immediately "due to job abandonment," then states that his Utah move and resulting inability to work in-office as the role required could not be supported. SAC ¶ 57; ECF No. 38-1 at 24 (Ex. E). Gray acknowledges the move and weekly-attendance obstacle; he disputes that these circumstances establish deliberate desertion of continuing professional responsibilities. The second sentence states management's location rationale, not an express definition or withdrawal of abandonment. Read together, the sentences must still be tested against the additional professional-integrity accusation pleaded in paragraphs 61 and 85.

The pleaded course supports that distinction. Bishop directed office-day PTO while recognizing Monday/Friday remote work. Gray remained in communication, sought ways to continue serving CSP, denied abandonment, and selected the offered continuing-work period. After the requested writing had not arrived, Bishop promised Monday access and outreach. SAC ¶¶ 25, 28, 30, 35, 45-54; ECF No. 38-1 at 12-13, 29, 75-78. Those facts concern whether he deserted his duties, beyond whether CSP could enforce its office directive.

Ridpath requires a charge implying "serious character defects such as dishonesty or immorality," assessed in its professional context. Ridpath v. Board of Governors Marshall University, 447 F.3d 292, 308-09 (4th Cir. 2006). The alleged meaning of "corrective action"—responsibility for serious NCAA violations, including academic fraud—could not be resolved against the employee at dismissal. Id. at 309. By contrast, "incompetence and outside activities" and "management problems" conveyed ordinary performance criticism. Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982); Zepp v. Rehrmann, 79 F.3d 381, 388 (4th Cir. 1996). Here, paragraphs 12 and 14 identify team leadership, supervision, mentoring, one-on-one coaching, application delivery, and technology and security coordination. His goals included "safeguarding of agency assets" and "security of customer assets." ECF No. 38-1 at 85. Paragraphs 61 and 85 allege that classifying this continuing, communicating director's departure as abandonment imputed deliberate desertion of those entrusted obligations, a serious breach of professional trust, rather than merely deficient managerial skill.

Local applications reinforce that distinction. Bunch treated charges of disobeying a judge's direct orders and violating the Judicial Code of Conduct as a close but sufficient stigma allegation. Bunch, ECF No. 24, at 12. Zimmerman likewise distinguished ordinary competence criticism from an additional implication that a deputy clerk invaded coworkers' privacy, finding the latter sufficient at pleading. Zimmerman v. O'Connell, No. 3:25cv31, ECF No. 27, at 15-17 (E.D. Va. Mar. 23, 2026). These decisions support examining the particular breach of professional trust alleged here, not treating every attendance violation as constitutional stigma.

Cannon rejects treating admitted underlying conduct as necessarily establishing the truth of an official discharge reason. 891 F.3d at 504-05. CSP later attributed June 30 termination to missing timely written confirmation after oral acceptance of the transition offer, while also citing refusal or inability to meet the office requirement; it did not invoke abandonment. SAC ¶ 60; Ex. W at 142-44. Read with Bishop's intervening Monday commitment, that account and

the contemporaneous abandonment charge support a factual dispute about the actual reason for immediate discharge.

Stevens rejected substantial falsity where the plaintiff admitted the conduct and disputed its characterization or immaterial omissions; the letter itself acknowledged supervisory direction. Stevens v. City of Greensboro, No. 1:25cv931, ECF No. 24, at 12-18 (M.D.N.C. June 29, 2026). Gray disputes whether he deserted continuing duties at all and whether abandonment was the actual discharge reason. Bishop's directed PTO and continuing-work communications supply the contrary facts. SAC ¶¶ 28, 40, 47-54, 60-61, 85.

**B. The complaint plausibly alleges likely disclosure of the separation reason.**

Paragraph 62 alleges both sides of the expected reference exchange: prospective employers considering comparable technology-leadership work are likely to ask why Gray left, and CSP is likely to communicate its maintained official reason. SAC ¶¶ 61-62, 86. CSP issued the abandonment reason through its COO, copied the CEO, HR and General Counsel, and, on information and belief, maintained it despite Gray's request for review. SAC ¶¶ 57, 61-63. DHRM's guidance directs verification inquiries to the former agency's HR office. SAC ¶ 62. That channel connects the expected question to the maintained official answer; it does not independently prove what CSP releases.

The combined circumstances, not retention or routing alone, support the alleged likelihood. CSP controls the record and response practices that would confirm or refute the inference. Lowy permits information-and-belief allegations grounded in facts making the inference plausible, without requiring robust evidentiary support unavailable before discovery or exclusive defendant control of the information. Lowy v. Daniel Defense, LLC, 167 F.4th 175 (4th Cir. 2026), slip op. at 33-36, petition for cert. filed, No. 26-60 (U.S. July 10, 2026). Lowy does not alter Count III's substantive disclosure requirement.

Sciolino requires a supported likelihood of disclosure, not a completed release. Its analysis included an admitted policy allowing disclosure of an employee's "reason for leaving" to

inquiring prospective employers. Sciolino v. City of Newport News, 480 F.3d 642, 647 n.3, 649-50 & n.5 (4th Cir. 2007). Cannon separately recognized that termination letters available upon request from personnel files may satisfy disclosure, apart from the actual media and staff disclosures there. 891 F.3d at 503-04. A denial that CSP releases entire files, Mem. 19, does not answer whether it supplies the maintained separation reason. Gray must plausibly allege likely exposure, but need not already produce a completed reference or CSP's internal reference policy.

Bunch accepted information-and-belief allegations supported by identified prospective judicial employers with likely file access. Bunch, ECF No. 24, at 11-12. Roncales accepted alleged access by prospective public-safety employers and an intended firefighting career; Zimmerman accepted ready judicial-file access by prospective state judicial employers. Roncales v. County of Henrico, 451 F. Supp. 3d 480, 504-05 (E.D. Va. 2020); Zimmerman, ECF No. 27, at 17-20 & n.9. On summary judgment, Roncales rejected the personnel-file theory for insufficient evidence of likely employer requests; a separate email-publication theory survived. Roncales v. McDowell, No. 3:19cv234, ECF No. 90, at 32-36 (E.D. Va. Sept. 30, 2021). Their particular access mechanisms are not alleged here. Gray instead identifies the expected departure inquiry, the designated HR channel and the maintained official reason likely to be supplied through it.

Counsel's assertion that CSP "in fact" does not release files is unsupported by a practice declaration and does not establish that fact on this motion. Mem. 19. The Court should assess paragraph 62's combined factual inference rather than resolve the outgoing-reference dispute through counsel's competing account.

Stevens rejected unsupported release-practice and anticipated-inquiry allegations, reinforced by an alleged refusal to provide the letter to the media. ECF No. 24, at 19-24 & n.5. Paragraph 62 instead alleges, on information and belief, that CSP is likely to answer expected departure inquiries with its maintained official reason through the identified HR channel. Its

sufficiency turns on that combined factual inference under Sciolino and Lowy, not use of the word "practice" or proof of a completed harmful reference.

Elhady involved a developed watchlist record, operational governmental sharing, limited private access, and a separate failure to establish the requisite change in legal status. Elhady v. Kable, 993 F.3d 208, 225-26 (4th Cir. 2021). Gray alleges discharge accompanied by an official charge likely to reach prospective employers. SAC ¶¶ 57, 61-62, 85-86. Internal management copies, retention alone and any VEC communication are not his asserted constitutional publication.

**C. The ultimatum denied meaningful review of the abandonment charge.**

Defendants treat Gray's participation and denial of abandonment as dispositive. Mem. 17-18. Sciolino declined at pleading to deem an earlier response meeting adequate and required assessment of the employee's interest, error risk, value of additional safeguards, and governmental burden under Mathews v. Eldridge, 424 U.S. 319, 335 (1976). 480 F.3d at 646 n.1. The question is whether the opportunity meaningfully allowed refutation of the serious charge, not simply whether Gray spoke.

The transcript records substantial dialogue but a constrained sequence. Allan announced abandonment at 19:06; Gray denied it at 19:08; Allan repeated the conclusion and limited his options to a notice period or immediate departure. Bishop refused weekend consideration and demanded a choice by the meeting's end. After Gray selected continued work, Allan repeated abandonment, invoked the telework agreement, a purportedly documented performance meeting and counsel's view. SAC ¶¶ 44-50, 87; Ex. H at 67-77. Paragraph 87 alleges the supporting documents were not presented for review. Allan's later "Do you have any questions for us right now?" followed selection, acceptance of terms and the resignation-email request. Id. at 78 (23:03-23:08). Gray's answer that his questions had been answered did not concede meaningful charge-focused review.

The Mathews factors support a focused opportunity to substantiate his denial. Gray's interest is avoiding a false serious charge restricting future employment. The alleged risk was treating an attendance impasse as established desertion without practical consideration of his rebuttal. The existing PTO directions and continuing-work communications could test that classification. Allowing their organized submission and responsive consideration would serve that purpose without requiring a trial or continued employment. The immediate choice and alleged absence of later review must be assessed against that modest burden. SAC ¶¶ 50, 63, 87.

Boston upheld two opportunities specifically directed to refuting identified charges, allowing rebuttal and corroboration; it did not require cross-examination or prescribe a universal format. Boston v. Webb, 783 F.2d 1163, 1166-67 (4th Cir. 1986). Roncales likewise involved repeated questioning and a denial, including her statement that counsel held exculpatory video, yet accepted the alleged absence of a fair opportunity to rebut the accusation. 451 F. Supp. 3d at 489-91, 505-06. These comparisons require examining the opportunity's substance. Loudermill's approval of informal preliminary process also relied partly on available full posttermination review. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 545-48 (1985).

Allan distinguished ordinary staff appeals, delegated to Morris, from harassment or illegality that "should absolutely go to the board"; the handbook likewise identified the Board as a recipient of discrimination complaints. ECF No. 38-1 at 7, 62, 159 (Exs. A, G, AA). After the termination letter identified no review procedure, Gray asked that Board to investigate, review the executive decisions, determine appropriate remedial action and address the harm. SAC ¶¶ 63, 87; ECF No. 38-1 at 24, 109-110 (Exs. E, R). He alleges no responsive charge-focused review. That functional request concerns the process sought, not the merits or amount of its separate settlement proposal. Zimmerman dismissed because the employee alleged no denial of process concerning publication through her personnel file. ECF No. 27, at

21-24. Gray expressly pleads the denied opportunity and unsuccessful later request. He seeks meaningful review before threatened employment-reference use, not an absolute right to a full pretermination hearing or a favorable result.

**D. The right was clearly established and each official's role is pleaded.**

The alleged conduct is specific to each official. Allan formulated and pressed the accusation; Bishop adopted and issued it after her PTO directions and subsequent communications. Morris participated in the disposition, defended management's position and allegedly approved the classification. SAC ¶¶ 10-11, 64, 85, 88. Her approval is alleged on information and belief, supported by her identified role and participation rather than title or receipt of a copy alone. Each claim concerns the official's own contribution. An official may cause a deprivation "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Sales v. Grant, 158 F.3d 768, 776-78 (4th Cir. 1998) (citation omitted). The alleged causal roles do not require each official personally to enter the record or answer a later reference.

Before June 2025, Ridpath, Sciolino and Cannon established the relevant rule concerning false, seriously stigmatizing official employment charges, prospective-employer exposure and meaningful name-clearing process. Ridpath, 447 F.3d at 308-15; Sciolino, 480 F.3d at 646, 649-53; Cannon, 891 F.3d at 501-06. Cannon involved actual publicity and affirmed denial of personal immunity on the due-process claim. Ridpath found fair warning without a prior case involving its label because the label's contextual meaning implicated the established serious-misconduct rule. 447 F.3d at 313-14.

Atkinson requires particularized fair warning, not an identical prior label, and places the clearly-established inquiry's burden on the official. Atkinson v. Godfrey, 100 F.4th 498, 504-06 (4th Cir. 2024). The comparison concerns the serious professional accusation, pleaded exposure and actual process, not a general right to fair employment treatment. Defendants cannot obtain immunity by treating their competing characterization as fact.

**E. Morris's prospective-relief claim requires separate consideration.**

Gray alleges that Morris presently can convene review and correct or annotate CSP-controlled records, and seeks relief warranted by the process and its findings. SAC ¶¶ 66, 91, 101. Doe v. University of North Carolina System allowed prospective record relief despite institutional and personal damages immunity. 133 F.4th 305, 318-19 (4th Cir. 2025); see Will v. Michigan Department of State Police, 491 U.S. 58, 71 n.10 (1989). Morris's alleged implementing authority supplies the necessary connection. An underlying violation remains required; a personal-immunity ruling confined to clearly established law would not resolve it. Gray seeks no retrospective damages from Morris officially.

**F. CSP has not shown it is an arm of the Commonwealth.**

CSP asserts its state-agency status and preserves fuller arm-of-state and nonperson arguments. Mem. 3, 16 n.5. Will excludes States and their arms; it does not determine CSP's status. 491 U.S. at 66-70. CSP bears the burden on its sovereign-immunity defense. Hutto v. South Carolina Retirement System, 773 F.3d 536, 543 (4th Cir. 2014). The pleaded statutory structure supports Gray's separate personhood theory.

Virginia created a corporation with contracting, investment, administrative and staffing powers, dedicated accounts and nonreverting balances. SAC ¶ 6; Va. Code §§ 23.1-701, -703, -704, -706. Galette identifies legal separateness and formal judgment responsibility as predominant considerations. Galette v. New Jersey Transit Corp., 607 U.S. 509, 523-30 (2026). Although addressing interstate immunity, it derives that analysis from federal arm precedents. Those principles should govern CSP's actual structure and obligation allocation. Corporate form alone does not decide status, and relevant circuit considerations remain; an agency label or expected financial support cannot replace the analysis.

Oberg rejected agency-label dismissal of state-created education-finance corporations and required the arm analysis, while also rejecting automatic personhood from incorporation. United States ex rel. Oberg v. Kentucky Higher Education Student Loan Corp., 681 F.3d 575,

579-81 (4th Cir. 2012) (FCA personhood; vacating dismissal). Post-Galette, Williams retained circuit factors and sheriff-specific precedent while distinguishing Galette's corporate setting. Williams v. Charleston County Sheriff's Office, No. 24-1238, slip op. at 3, 5-6 (4th Cir. July 15, 2026) (unpublished).

The complete funding provision supports the pleaded separation. Section 23.1-705(A) includes contract benefits, other Plan obligations, maintenance and current-biennium operating expenses. B makes covered Board undertakings payable solely from the Plan, without Commonwealth debt or pledged credit. The Board administers the Plan through its employed CEO and authorized staff, and Plan operating expenses are paid from the Fund. Va. Code §§ 23.1-701(C), (E), -703(A), -704(1). These provisions should be read together to assign CSP's own established employment liability to the Plan. Notwithstanding B, C requires the Governor to propose a sum-sufficient appropriation; sums the legislature appropriates become advances, repayable without interest from excess operating revenue subject to contract-holder rights. The mandatory proposal is not textually a legislative appropriation command or direct liability for every judgment. Hutto instead involved a constitutional funding command to South Carolina's legislature, authoritatively construed to require restoration of the retirement system's fiscal integrity. 773 F.3d at 544-45.

Nor would a secondary funding obligation alone make Virginia the primary judgment debtor. Galette expressly applies Lewis's distinction between liability on the judgment and an obligation to indemnify. 607 U.S. at 525; Lewis v. Clarke, 581 U.S. 155, 165-67 (2017). Even if subsection C requires enforceable financial support, the Court must determine whether that support finances the Plan's obligation or makes the Commonwealth itself liable for the judgment.

Singleton's corporation depended on annual State appropriations to operate. Singleton v. Maryland Technology & Development Corp., 103 F.4th 1042 (4th Cir. 2024), slip op. at 11-15. SAC ¶ 7 instead alleges, through CSP's CFO, program-generated revenue apart from a

temporary RetirePath Treasury loan. ECF No. 15-1 ¶ 3. That bears on operational independence, not alone on judgment responsibility.

Entity attribution is separately alleged: Morris exercised delegated final authority over the classification and contest process. SAC ¶¶ 65, 89; Ex. G at 41-42, 62 (13:36-14:25, 31:52-32:27); ECF No. 38-1 at 7 (Ex. A). Final policymaking, not ordinary decisionmaking discretion, is required. Pembaur v. City of Cincinnati, 475 U.S. 469, 481-83 & n.12 (1986) (plurality opinion); Riddick v. School Board of the City of Portsmouth, 238 F.3d 518, 523-26 (4th Cir. 2000). The claim rests on that function-specific delegation and conduct, not non-arm status or statutory staffing power alone.

**V. Count IV states a defamation claim against Bishop.**

Bishop's letter states that Gray's employment is "terminated effective immediately due to job abandonment." It then states: "As we have discussed to include most recently on Friday June 27th, your permanent move to Utah and resulting inability to work in-office as this role requires cannot be supported." SAC ¶ 57; ECF No. 38-1 at 24 (Ex. E). Gray acknowledges the move and weekly-attendance obstacle but disputes the letter's additional charge of deliberately forsaking his teams and continuing professional responsibilities. Even assuming CSP could require weekly attendance and reject further Utah work, that authority does not establish desertion; paragraph 95 identifies Bishop's contrary administered course. The Utah sentence does not expressly define or withdraw abandonment. Count IV concerns this complete letter and Bishop's publication to Morris, Geis and McGee, within paragraph 93's incorporation, which excludes the later EEOC explanation.

**A. The complete letter is reasonably capable of conveying the pleaded accusation.**

Virginia examines the whole statement. Hyland v. Raytheon Technical Services Co., 670 S.E.2d 746, 751-52 (Va. 2009). Gray supervised and mentored employees, conducted regular individual coaching, and coordinated delivery and technology-security work. SAC ¶¶ 12, 14, 94. The pleaded accusation is deliberate desertion of those entrusted responsibilities. It attacks

professional trust in leading and mentoring his teams, imputing lack of integrity in that work. This is a claimed act of desertion capable of proof, not a general assessment of leadership quality. That professional nexus supports defamation per se. Tronfeld v. Nationwide Mutual Insurance Co., 636 S.E.2d 447, 449-51 (Va. 2006).

Fuste treated patient abandonment as a factual accusation of breached professional duty that could support defamation per se. Fuste v. Riverside Healthcare Ass'n, 265 Va. 127, 132-33 (2003). Wynn provides a nonmedical comparison: job abandonment can portray irresponsibility and unprofessionalism beyond departure alone. Wynn v. Wachovia Bank, N.A., No. 3:09cv136, ECF No. 51, at 16-18 (E.D. Va. July 13, 2009) (denying summary judgment on defamation after an earlier dismissal without prejudice for insufficient publication and malice allegations, ECF No. 15 at 5-8; later defense verdict, ECF No. 71).

In Stewart, this Court treated a termination letter's investigation and stated misconduct reason as actionable where the plaintiff alleged no investigation occurred and the reason was pretext. Stewart v. Evelyn, No. 3:24CV84 (RCY), ECF No. 25, at 19-22 & n.10 (E.D. Va. Sept. 13, 2024). Privilege was not raised there; the relevant comparison is the letter's testable factual basis. Here paragraphs 94-96 identify a similarly testable accusation and the contrary course Bishop personally administered.

Pendleton permits circumstantial proof of the intended implication and rejects a general requirement that the words alone demonstrate the author's endorsement. Pendleton v. Newsome, 290 Va. 162, 166-67, 174-75 & n.5 (2015). It also supplies a factual comparison: the plaintiff alleged compliance with institutional instructions before officials falsely assigned her blame. Gray likewise alleges the instructed PTO course, compliance and an intended attribution of professional desertion. SAC ¶¶ 28, 40, 95-97. The Court decides whether the whole publication reasonably bears that meaning; the pleaded circumstances explain both its factual content and intended effect.

Defendants' implication cases do not require dismissal. Webb's article could suggest that others acted independently and expressly denied preferential treatment based on the plaintiff's position. Webb v. Virginian-Pilot Media Cos., 752 S.E.2d 808, 811-12 (Va. 2014). Bishop's letter affirmatively attributes abandonment to Gray. The disputed Utah assertion does not disclaim the additional professional blame. Webb permits fair inferences, but not added matter. The pleaded professional-desertion meaning follows from the express abandonment charge in the context of Gray's continuing duties. Id. at 811. Carter dismissed without prejudice because the allegations left unclear whether defendants actually published "misconduct" or merely reported an undisputed ban or termination. Carter v. Dominion Energy, Inc., 529 F. Supp. 3d 525, 540-41 (W.D. Va. 2021). Here the signed letter supplies the exact accusation; paragraph 96 alleges the intended and conveyed meaning, supported by paragraph 95's contrary facts.

Schaecher protected a conclusion on disclosed, unchallenged facts known at least as well to its recipients. Schaecher v. Bouffault, 290 Va. 83, 103-06 (2015). Morris participated in the June 27 meeting; Friday's text named Geis as included. Exs. H, F, pp. 72, 80, 29. Their involvement does not resolve whether the letter adds false professional blame. Paragraph 95 identifies contrary PTO directions and continuing-work communications omitted from the letter. Cashion protected "gave up" criticism but treated purposeful withholding and responsibility for death as factual, although made before operating-team colleagues. Cashion v. Smith, 286 Va. 327, 335-38 (2013). Gray alleges deliberate professional desertion, not inadequate commitment.

Jackson allowed an internally copied termination-letter claim despite an admitted relationship and disclosed policy against relationships with clients. The employee denied knowing his partner was a client; the complete letter plausibly implied knowing exploitation. Jackson v. Middle Peninsula Northern Neck Community Services Board, No. 3:16cv337, ECF No. 27, at 2, 5-6 & nn.3-4 (E.D. Va. Jan. 18, 2017). The implication was more severe,

privilege remained open, and the court doubted eventual proof. But internal recipients and a policy explanation did not eliminate additional factual blame.

**B. The pleaded course contradicts the material abandonment accusation.**

Defendants describe Gray's PTO use as a means to “circumvent” the office requirement. Mem. 24. That substitutes their characterization for the pleaded course Bishop prescribed: her June 13 email approved June 17-18 PTO "to be with your wife" and restated the May 27 direction for future office days he could not attend from Utah, and paragraph 40 alleges compliance on June 24-26. SAC ¶¶ 28, 35, 39-40; ECF No. 38-1 at 12-13. At the June 27 meeting he said he was "not refusing" but "not able to come in on those days," and "would love to work remotely on those days." SAC ¶ 42; Ex. H at 65. Gray remained in communication, selected conditional continuing work, and received Bishop's Monday-access promise despite the missing writing. SAC ¶¶ 47-54, 95. These facts contradict the professional blame conveyed independently of whether every absence ultimately qualified for FMLA protection.

The Utah assertion also remains disputed. Gray acknowledges his directive and weekly-travel obstacle; he disputes the asserted uniformity and necessity. Defendants repeatedly invoke a requirement for all managers and later call it “fixed.” Mem. 2, 4-6, 15, 24, 29. Allan identified return-to-office communications as probably the closest thing in writing, acknowledged Gray’s exception, and distinguished the attendance and residency practices from written policy ("It's a practice, not a policy") while maintaining that telework was office-centric. Ex. G, pp. 33-34, 42-43. The reproduced guidance says “most employees,” two or three days; the telework policy permits individualized arrangements. Exs. A, AA, pp. 7, 163-165. The March memorandum itself describes Gray’s earlier one-day expectation. Allan acknowledged his exception and discussed alternative days, a four-day schedule and reducing the office requirement. SAC ¶¶ 15, 17-20, 33; Exs. G, X, pp. 34, 39, 48-49, 54-55, 57, 60, 146. His prior remote performance and proposed recurring Richmond attendance further contest the asserted incompatibility. SAC ¶¶ 14, 24-30; Ex. AB, pp. 167-168. No approved monthly

arrangement is alleged. These facts challenge asserted uniformity and necessity; Bishop's prescribed PTO and continuing-work course independently contradict desertion even assuming CSP could enforce the individual directive.

Hyland reversed summary judgment because admissions of leadership and financial shortfalls did not admit the complete statements' attribution of responsibility. 670 S.E.2d at 751-52. Bishop's PTO directions, Gray's compliance and selection of continued work, and her access promise bear on whether he deserted his responsibilities or management ended its administered course. SAC ¶¶ 28, 40, 47-54, 95. If the letter reasonably conveys that additional factual blame, the location conflict does not establish its substantial truth.

Dangerfield dismissed a substantially accurate report that the plaintiff was accused of rape but allowed a separate claim based on a false report of arrest. Dangerfield v. WAVY Broadcasting, LLC, 228 F. Supp. 3d 696, 703-06 (E.D. Va. 2017). The accurate accusation did not establish the added arrest sting. Here too, an attendance dispute does not establish the truth of the alleged additional desertion accusation.

**C. Bishop's own directions, promise and knowledge plausibly establish abuse of the privilege.**

Assuming the recipients' common employment interest establishes a qualified privilege, Gray pleads its abuse through knowing or reckless falsity. That route requires neither excessive distribution nor personal spite. Mem. 23; Cashion, 286 Va. at 338-40. Fuste found malice adequately pleaded from the departure circumstances under a spite-or-ill-will formulation, while leaving privilege undecided. 265 Va. at 134-35. The separate question is whether Bishop's own information plausibly shows knowledge or serious doubt about the actionable desertion meaning.

Bishop's knowledge was personal. She directed the PTO course and memorialized it on June 13, separately approving June 17-18; paragraph 40 alleges compliance with the broader direction on June 24-26. After receiving Gray's June 23 medical/work-arrangement email, she

complained that his out-of-office response disclosed an absence he had not told her about. Gray replied that he had identified his Utah need and inability to attend Tuesday through Thursday. SAC ¶¶ 28, 35, 37-40; Exs. B, C, Z at 12-17, 155. That exchange supports advance awareness without conceding her disputed notice accusation or automatic leave approval. She then heard him deny abandonment and select continued work subject to the stated terms. SAC ¶¶ 45-49.

Friday's text adds independent support. Bishop acknowledged the missing writing "as agreed," yet announced that access would resume Monday and CSP would reach out. SAC ¶ 52; Ex. F at 29. The text did not condition that Monday course on the writing. Paragraph 54 alleges receipt of the family-medical notice before Bishop published immediate termination for abandonment. The sequence supports knowing or reckless attribution of desertion to an employee whose continued work she had affirmatively contemplated, without treating her text as an unconditional employment guarantee.

In Smith, the supervisor allegedly directed financial practices, reassured the employee about unfinished work before leave, then manufactured corroboration to blame her. Specific malice allegations sustained the internal defamation claim. Smith v. School Board for the City of Norfolk, No. 2:21cv138, ECF No. 26, at 3-6, 29-31 (E.D. Va. Nov. 5, 2021). Gray alleges no comparable fabrication of corroborating witness statements. The comparison concerns Bishop's prescribed course and later access promise as sources of her knowledge.

Rodarte allowed a claim where known policies and accepted practices allegedly contradicted the publisher's embezzlement accusation. Rodarte v. Wal-Mart Associates, Inc., No. 6:12cv55, ECF No. 28, at 4, 8, 12-13 & n.5 (W.D. Va. May 6, 2013). Isernia denied dismissal despite asserted mandatory-reporting privilege because the publisher allegedly knew contrary operational facts, while reserving examination after discovery. Isernia v. Danville Regional Medical Center, LLC, No. 4:22cv22, ECF No. 54, at 24-25 & n.14 (W.D. Va. Nov. 6, 2024). These support identified contrary knowledge, not inadequate investigation alone.

Nedrick found a performance-charge denial and age-replacement allegations insufficient to establish spite or ill will, despite positive feedback and the publisher's assurance that nobody had complained. Nedrick v. Southside Regional Medical Center, No. 3:19cv202, ECF No. 34, at 4, 14-16 (E.D. Va. Feb. 3, 2020). Gray instead identifies Bishop's prescribed course, advance awareness, participation in continued-work arrangements and access promise as contrary personal knowledge. Cashion recognizes knowing or reckless falsity as an independent ground for defeating privilege, a route Nedrick's discussion did not separately analyze. 286 Va. at 338-40.

The earlier accusation and conditional transition do not conclusively establish good faith. Gray accepted the offered period, omitted the requested writing and faced reserved early termination. SAC ¶¶ 45-52. Allan's statement that "our counsel shares this view" concerned abandonment under the office requirement, telework agreement and performance meeting. It followed Gray's selection of the month but preceded his acceptance of detailed terms, Bishop's Friday access statement and Monday's notice. Ex. H at 77 (21:02-22:27). Those later events and Bishop's earlier PTO directions matter to her belief when publishing the June 30 letter. If the letter conveys actionable desertion, paragraph 95's personally known facts support knowing or reckless misdescription. Neither authority to terminate nor repetition of the label establishes honest belief.

Goodman permits an affirmative-defense dismissal only when the necessary facts clearly appear and the allegations foreclose the plaintiff's response. 494 F.3d at 464-66. Paragraphs 95-97 supply contrary conduct and knowledge; the motion cannot establish good faith by selecting it over that plausible inference. Cashion's clear-and-convincing standard remains the ultimate burden. At dismissal, the question is whether the alleged facts plausibly support knowing or reckless falsity. Fairfax v. CBS Corp., 2 F.4th 286 (4th Cir. 2021), slip op. at 9-10 (applying constitutional actual malice; affirming dismissal). Bishop's own directions, promise and alleged receipt of Monday's notice supply that basis.

Paragraph 98 pleads reputational, professional and emotional injury caused by publication; paragraphs 94 and 102 also support per-se recovery. Neither an outside reference nor VEC publication is required, and discharge loss is not automatically defamation damage. The Court should deny dismissal.

**VI. The Court should deny the motion.**

Gray requests denial of ECF No. 40, assessing each count, defendant, capacity and remedy separately. Clearly-established-law immunity does not decide entity or prospective relief; lack of an underlying violation defeats dependent routes. Each FMLA period requires separate assessment. Count III preserves nominal damages for proven process denial without compensable injury. SAC ¶¶ 92, 101.

Dismissal solely for sovereign immunity should be without prejudice and confined to affected claims or capacities. Declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) should not decide Count IV's merits. For curable defects, Gray requests consideration of his pending motion and proposed TAC, ECF Nos. 43 and 43-1, before dismissal with prejudice; alternatively, dismissal without prejudice and leave to seek a concrete amendment. See Stewart, ECF No. 25, at 23-24.

Respectfully submitted,

______________________________

Alexander C. Gray, Plaintiff pro se
150 N. Snow Canyon Dr., Unit 19, Ivins, UT 84738
(804) 335-7579 | zandergray1@gmail.com
Date: 11/3/2026

**CERTIFICATION**

I declare under penalty of perjury that:
(1) No attorney has prepared, or assisted in the preparation of this document.
Alexander C. Gray
Name of Pro Se Party (Print or Type)

______________________________

Signature of Pro Se Party
Executed on: 11/3/2026