FILED
11/13/2026
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
ALEXANDER C. GRAY, Plaintiff,
v. Civil Action No. 3:25-cv-00742-RCY
COMMONWEALTH SAVERS PLAN, et al., Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED AND SUPPLEMENTAL COMPLAINT**

## I. The Court should grant leave to file the proposed TAC.

Gray seeks leave to file the Third Amended and Supplemental Complaint (TAC), ECF No. 43-1. It retains the four Second Amended Complaint (SAC) counts, adds two ADA counts, and asserts the FMLA claims against Bishop, Allan and Morris individually as well as Commonwealth Savers Plan (CSP). Defendants ask the Court to deny leave and decide their pending dismissal motion instead. ECF No. 46 (Opp.) 3, 7, 19.

Gray received DOJ's right-to-sue notice on October 16; it lists defense counsel as a copy recipient. TAC ¶ 69F; ECF No. 43-2 at 183. He requested consent October 20, received refusal October 22, and moved October 23 with a comparison identifying the changes. ECF No. 43 at 1-2.

The Court weighed Defendants' prior futility arguments and found the SAC "taken as a whole" not futile because "at least one" claim survived. It granted leave and denied the earlier motion as moot. ECF No. 37 at 1-2 & n.1. Defendants say Counts I and II "effectively mirror" the SAC. Opp. 6. Gray requests the same sequence here: authorize the TAC, deny ECF No. 40 without prejudice as moot, and permit a response to the amended pleading.

Rule 15(a)(2) directs that leave be freely given when justice requires; Rule 15(d) permits supplementation for the later notice. A proposed amendment is futile if clearly insufficient or frivolous on its face or unable to survive dismissal. Save Our Sound OBX, Inc. v. N.C. Department of Transportation, 914 F.3d 213, 228 (4th Cir. 2019). A plausible claim is not defeated merely because an innocent explanation appears more likely. Woods v. City of

Greensboro, 855 F.3d 639, 649 (4th Cir. 2017). Gray's pro se allegations receive liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Fed. R. Civ. P. 8(e).

**II. Adding these related claims before discovery does not cause undue prejudice.**

Defendants say Gray delayed these additions and forced them to incur the expense of two dismissal motions. Opp. 1-6. That expense does not justify denying leave on this record. Laber distinguishes related amendments before discovery from new facts introduced near trial; delay alone is insufficient. Laber v. Harvey, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc).

Gray disclosed the intended ADA additions before the SAC became operative. ECF No. 35 at 2; ECF No. 37 at 1; ECF No. 43 at 1. Those counts concern the same June decisions and officials addressed in the EEOC proceedings. ECF No. 43-2 at 137-147, 179-181.

The personal FMLA claims concern the same conduct and officials already sued individually under Count III. ECF No. 38 at 22; ECF No. 44 at 7-8. Those disclosed additions do not themselves establish bad faith. ECF No. 43 at 4-70.

The Court deferred discovery scheduling. ECF No. 39. Defendants identify no lost evidence, reopened discovery or disrupted trial. Gray does not oppose Court-directed reuse of existing briefs with focused responses to the TAC's changes. ECF No. 44 at 12.

The Court identified no uncured defect; successive amendments alone do not establish repeated failure to cure. ECF No. 37; Foman v. Davis, 371 U.S. 178, 182 (1962).

**III. The pleaded charge and worksharing record do not establish an ADA time bar.**

Defendants dispute April's charge status and assert 180 days because state proceedings did not begin. Opp. 4 n.1, 15-18. April 11 was 285 days after the June 30 discharge and 288 days after the June 27 forced exit. A limitations defense warrants dismissal only if the pleadings contain every necessary fact and foreclose Gray's response. Goodman v. Praxair, Inc., 494 F.3d 458, 464, 466 (4th Cir. 2007) (en banc).

**A. April 11 was a signed, verified charge; May 26 perfected it.**

Form 5A identifies Gray and CSP, disability and retaliation, his wife's bipolar disorder, and the June 23 objection, June 27 ultimatum and June 30 discharge. It states that signing files a charge; Gray's April 11 signature is under penalty of perjury. ECF No. 43-2 at 173. It satisfies the written, verified charge requirements. 42 U.S.C. § 2000e-5(b); 29 C.F.R. §§ 1601.9, 1601.12(b).

The April 9 email instructed Gray to sign Form 5A to file a charge and described a later interview for the "formal/perfected" Form 5. Its warning addressed his earlier inquiry. Opp. 18 n.3; ECF No. 43-2 at 191-192. Gray returned it April 11; the EEOC confirmed receipt and processing April 14. Id. at 191, 193. The cited EEOC portal page documents a charge “filed on 04/11/2026” and a separate April 14 upload. Id. at 174-175; Opp. 17.

May's Form 5 amplifies April's allegations of the wife's disability, unequal treatment, opposition and June decisions against the same employer. ECF No. 43-2 at 179-181; TAC ¶¶ 69C-69D. Qualifying clarifications relate back under § 1601.12(b).

**B. Gray invokes 300 days through the agencies' worksharing process.**

Paragraph 69E alleges that Gray's EEOC filing commenced both agencies' proceedings, entitling him to 300 days. The ADA incorporates Title VII's procedures. 42 U.S.C. § 12117(a). Tinsley held that Virginia's human-rights agency is a qualifying deferral agency, permitting the 300-day period. Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 440-42 (4th Cir. 1998), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Section 2000e-5(e)(1) requires initial state proceedings and directs that "a copy of such charge shall be filed by the Commission with the State or local agency." Virginia's Office of Civil Rights (OCR) may investigate federal discrimination claims and enter worksharing agreements. Va. Code §§ 2.2-3902, 2.2-520(C)(6).

The EEOC may institute state proceedings for the claimant without a separate personal state filing. Love v. Pullman Co., 404 U.S. 522, 525-26 (1972). A processing waiver

terminates the federal waiting period even if state jurisdiction remains. EEOC v. Commercial Office Products Co., 486 U.S. 107, 114-16 (1988). Puryear held that EEOC filing under Virginia's receiving-agent and waiver terms "commences proceedings with both" agencies. Puryear v. County of Roanoke, 214 F.3d 514, 519-20 & n.6 (4th Cir. 2000). The FY2025 extension continued the FY2024 agreement through September 30, 2025. Reply Ex. 2. Those underlying terms state that EEOC receipt "will automatically initiate the proceedings of both the EEOC and the FEPA." Reply Ex. 1 § II.A, at 2. Section III.A.1 waives the sixty-day exclusive-processing period "[f]or charges originally received by the EEOC." Id. at 4. Where that waiver applies, a qualifying charge received within 300 days is timely. 29 C.F.R. § 1601.13(a)(4)(ii)(A).

Edelman v. Lynchburg College applied Virginia's 300-day period and treated failures to number a sufficient charge or forward copies as agency-processing failures, not charge deficiencies. 300 F.3d 400, 404 (4th Cir. 2002). Its state-exhaustion analysis followed Puryear. Id. at 405 n.8. In Edelman, the later verified Form 5 was actually forwarded to Virginia, and only the claim included in that form survived. Id. at 403, 405-06.

USAspending reports Virginia OCR's Contract 45310026C0005 signed March 11, 2026, covering October 1, 2025-September 30, 2026. Reply Ex. 3. EEOC's December 8 memorandum states that FY2026 funding contracts would include worksharing agreements, except for agencies not seeking funding. Reply Ex. 4. These records support continued operation; the executed Virginia terms remain unproduced. Gray requests notice of the published records and their reported information, not the missing clauses. Fed. R. Evid. 201(b)(2), (e).

**C. The charge-specific record supports the pleaded worksharing route.**

Defendants rely on the absence of a Virginia number, portal forwarding entry or showing of OCR contact. Opp. 17. April's printed statement says, “I understand this charge will be filed with both the EEOC and the State or local Agency, if any”; May's form names Virginia OCR,

as Defendants concede (Opp. 17): "I want this charge filed with both the EEOC and the State or local Agency, if any." ECF No. 43-2 at 173, 179, 181. May's acknowledgment says the EEOC "dual files" charges initially filed with it and also covered by state or local law, "meaning the FEPA will receive a copy of the charge." Id. at 195.

The December 4 response gave April 26, 2026 as the filing deadline, with "143 days left." Id. at 188; Opp. 18 n.3. April's instructions likewise gave April 27. ECF No. 43-2 at 191-194. CSP's EEOC statement used "the 300 day allowable period" but treated May 26 as the filing date. Id. at 137, 145. The EEOC record instead identifies April 11. See Section III.A.

Gray's Form 5 names OCR, and Section III.D presents his signed submission directly to OCR. These facts distinguish Servicios Latinos, where the court found no state receipt or contact and no state agency named on the charge. Servicios Latinos, Inc. v. Amado Gomez, No. 2:24-cv-182, ECF No. 111, at 4-5 (E.D. Va. Jan. 26, 2026). That plaintiff submitted an agreement and argued automatic commencement, but the court distinguished Puryear based on actual transmission. Servicios Latinos, ECF No. 63 at 7-10 & Ex. 4; ECF No. 111 at 5 n.3. The court also recognized decisions applying 300 days where "the initial EEOC Charge listed the State analog alongside the EEOC." Id. at 4-5.

Sales likewise lacked both a dual-filing allegation and an attached charge. Sales v. Booz Allen & Hamilton, Inc., No. 1:23-cv-1621, ECF No. 25, at 6 n.4 (E.D. Va. Jan. 16, 2025). It applied 180 days despite the defendant's use of 300; the plaintiff did not oppose that position. Wall applied North Carolina's limited deferral rules, not Virginia's, and found the charge late even under 300 days. Wall v. Mountaire Farms, Inc., 835 F. Supp. 3d 701, 713 (E.D.N.C. 2026).

Paragraph 69E alleges proceedings in both agencies. Missing routing details do not establish on the TAC's face that only federal proceedings began. Goodman, 494 F.3d at 466. If confirmation is required, Gray requests an opportunity to supply Contract 45310026C0005's executed terms or official confirmation and material charge records before denial.

**D. Gray directly submitted his signed employment grievance to Virginia OCR.**

If Gray's signed mailing commenced state proceedings, sixty days expired November 7, 2025, before the April 11 charge and without requiring an FY2026 waiver. Gray sent OCR a signed copy of his Board-letter package requesting investigation and remedial action. His September 2 voicemail identified the mailing and requested an OCR case or investigator; OCR received it September 8. The retained letter identifies Gray, CSP and his EEOC reference, describes his June 30 discharge after a family-medical PTO request, and lists association discrimination and retaliation. Reply Ex. 5 ¶¶ 2-3 & Atts. A-B; ECF No. 43-2 at 107, 110-114. His preceding request to OCR supports treating the Board-addressed copy as a grievance presented to that agency.

Virginia's receipt rule covers writings identifying the parties and generally describing the challenged practices. 1 Va. Admin. Code § 45-20-50(B). Federal commencement differs from state perfection. See Oscar Mayer & Co. v. Evans, 441 U.S. 750, 759-60, 763-64 (1979) (parallel ADEA provision). Section 1601.13(b)(2)(iii) recognizes actual receipt of a written, signed factual statement. 42 U.S.C. § 2000e-5(c); 29 C.F.R. § 1601.13(b)(2)(iii); 46 Fed. Reg. 43,037, 43,039 (Aug. 26, 1981). Gray received no response to that mailing. Reply Ex. 5 ¶ 3. Gray also requests leave to submit Exhibit 5 and add proposed paragraphs 69E2-69E3 to the TAC, with Defendants afforded a response.

**E. The November 18 writing provides an earlier-filing alternative.**

Paragraph 69E1 preserves the November 18 email as an initial charge later clarified and verified under § 1601.12(b). See Edelman, 300 F.3d at 404-06. Sent within 180 days, it identified CSP, June 30 and disability/retaliation, stated "I must amend and perfect my charge," and requested immediate intake or amendment instructions. ECF No. 43-2 at 186-187. The EEOC called the earlier submission an inquiry and warned against email filing. This alternative rests on the writing's substance and later verification. Id. at 188-189; ECF No. 44 at 6-7.

**F. The agency advice and diligence separately support equitable tolling.**

Tolling requires diligence and extraordinary circumstances beyond the claimant's control preventing timely filing. Wall, 835 F. Supp. 3d at 713; Opp. 15. On Defendants' 180-day theory, the agency gave an incorrect April deadline on December 4, before the deadline for either June decision expired. His November 18 request identified June 30 and reported the scheduler unavailable following the shutdown; the EEOC acknowledged appointment choices were "grayed out." ECF No. 43-2 at 186, 188. His declaration explains that he relied on the agency's promised timely-filing opportunity and April 26/27 dates while continuing online and telephone efforts, often several times a week, through April. Reply Ex. 5 ¶¶ 4-5 & Att. C. He returned Form 5A two days after receiving the April 9 instructions. ECF No. 43-2 at 191-194.

Morris applied tolling to agency-caused intake delay. Morris v. Lowe's Home Centers, Inc., No. 1:10cv388, ECF No. 13, at 7-10 (M.D.N.C. June 13, 2011). Husick denied without prejudice a timeliness dismissal motion after repeated incorrect 300-day advice where 180 days applied. Husick v. Allegheny County, No. 07-1175, ECF No. 36, at 17-20, 26 (W.D. Pa. June 18, 2009). Weathers excused a two-day-late Title VII charge based on agency delay, diligence, prompt compliance and lack of prejudice. Weathers v. Houston Methodist Hospital, No. 23-20536, slip op. at 9-12 (5th Cir. Sept. 4, 2024). King denied relief where the claimant gave an incorrect incident date and failed to establish agency-caused delay. King v. Southwire Co., LLC, No. 1:24-cv-664, ECF No. 49, at 21-27 (M.D.N.C. Aug. 14, 2026). Gray's accurate date, repeated efforts and reliance on agency advice support tolling.

**IV. Defendants' immunity and naming objections do not establish futility.**

**A. CSP's structure and judgment responsibility must be assessed under Galette.**

Gray asks the Court to reject CSP's claimed state immunity. Defendants bear the burden of proving arm-of-state status. The circuit considers judgment responsibility, autonomy, statewide or local concerns, and state-law treatment. Hutto v. South Carolina Retirement System, 773 F.3d 536, 543, 546 (4th Cir. 2014). Galette v. New Jersey Transit Corp., 607 U.S.

509, 523-27 (2026), emphasizes legal separateness and formal judgment liability while cautioning against undue weight for state control. TAC ¶¶ 6-8 plead CSP's structure and funding. Garrett and Passaro do not decide CSP's status. Passaro v. Virginia, 935 F.3d 243, 247-49 (4th Cir. 2019).

Defendants invoke Galette at 523-24 for a "functional liability analysis" based on Treasury custody and financial impact. Opp. 14. Those pages emphasize a "legally separate entity liable for its own judgments." The Court "has never once found a corporation that was liable for its own judgments to be an arm of the State, even when the State had significant control over the entity." 607 U.S. at 526. The question is "whether the State would be formally obligated to pay the entity's judgments." Id. at 534. Defendants acknowledge that "Virginia law does not expressly state that the Commonwealth is legally liable for judgments against Commonwealth Savers." Opp. 14. Neither corporate form nor potential effects on Treasury-held funds alone resolves status.

Under section 23.1-705(A), "current obligations" include contract benefits, other Plan obligations, maintenance and operating expenses. Subsection B makes covered Board acts and undertakings payable solely from the Plan and disclaims Commonwealth debt or pledged credit. Notwithstanding B, subsection C says the Governor "shall include in the budget bills" a sum-sufficient appropriation under § 2.2-1509. Enacted sums become interest-free advances repayable from operating revenue exceeding current obligations, subject to contract-holder rights. Defendants' assertion that "the Governor must appropriate" confuses a required budget proposal with legislative enactment. Opp. 14. Gray explained that distinction in his opposition. ECF No. 45 at 22. Even if an employment judgment is a current obligation, subsection C does not require legislative enactment or Commonwealth liability. Possible nonrepayment shows fiscal exposure, not an established Commonwealth judgment obligation. Galette, 607 U.S. at 525-26, 534; TAC ¶ 7.

Infants distinguished executive budget procedures from legislative funding duties: a reserve-shortfall provision required an agency request while leaving appropriation discretionary. Infants v. Virginia Housing Development Authority, 221 Va. 659, 673-74, 272 S.E.2d 649, 657-58 (1980). Section 705(C) imposes the stronger duty to include an appropriation in the budget bills, but likewise does not command legislative enactment.

Hutto upheld immunity despite debt disclaimers because South Carolina's Constitution, as its supreme court construed it, required annual appropriations and contributions sufficient to fund accrued retirement liabilities and restore fiscal integrity. A judgment-caused shortfall therefore required additional funding, including from the State, without proof the particular judgment would exhaust the funds. 773 F.3d at 544-46. Section 705(C) contains no comparable legislative restoration command, and Defendants identify no authoritative construction imposing one.

The budget preserves fund segregation and designated sources; sum-sufficient authority permits the Governor to exceed estimates for the appropriation's purpose. 2026 Va. Acts, Sp. Sess. I, ch. 1, enacting clause §§ 4-6(I). Items 481(A)-(C) (benefits, referencing section 705) and 482 (administration) designate Enterprise funds. An appropriation may require authorized payments, but neither that duty nor the accounting label identifies Virginia as the judgment debtor. See Va. Code §§ 2.2-1822, -1825.

Virginia created CSP as a "body politic and corporate" and independent agency. Its Board administers programs, invests and contracts; its CEO manages the Plan and staff. Va. Code §§ 23.1-701(A), -703(A), -704(1), (3), (5); TAC ¶ 6. The Board may acquire property and create a wholly owned Virginia entity to hold authorized real property. Operating and administrative services follow the statutory fiduciary standard and are exempt from the Virginia Public Procurement Act. § 23.1-706(A)-(C). Savings-trust contributions enter separate accounts; other Plan money enters a special nonreverting Treasury fund and then separate accounts. Funds pay

benefits and operating expenses, not unrelated Commonwealth purposes. §§ 23.1-701(B)-(C), -706(B).

In Singleton v. Maryland Technology & Development Corp., 103 F.4th 1042, 1049-51 (4th Cir. 2024), recurring legislative appropriations were necessary because other revenues could not sustain operations. Here, Defendants' CFO declared CSP funded solely by program-administration revenues, apart from a temporary RetirePath Treasury loan. ECF No. 15-1 ¶ 3; TAC ¶ 7.

Oberg rejected treating independently generated revenue as state funds through Treasury custody and ministerial payment approval where the corporation retained control. United States ex rel. Oberg v. Pennsylvania Higher Education Assistance Agency, No. 15-1093, slip op. at 24-26, 32-38 (4th Cir. Oct. 21, 2015). It also rejected an unsupported prediction of necessary State funding contradicted by the financial record. Id. at 47-48 n.16. Unlike PHEAA, CSP needs legislative and gubernatorial appropriation approval for nongeneral operating expenditures. Id. at 38; Reply Ex. 6, FY2025 Annual Comprehensive Financial Report, Note 1J at 59. Gray requests notice of the report, not a finding that accounting labels establish judgment liability. Fed. R. Evid. 201(b)(2).

Williams v. Charleston County Sheriff's Office, No. 24-1238, slip op. at 3, 5-6 (4th Cir. July 15, 2026) (unpublished), applied sheriff-specific precedent. Young v. Rector & Visitors of the University of Virginia, No. 3:25-cv-00083, ECF No. 203, at 5-15 (W.D. Va. Oct. 26, 2026), examined corporate autonomy and compulsory funding after jurisdictional discovery. It distinguished Treasury accounting and sum-sufficient spending authority from Commonwealth judgment liability, but held UVA immune under binding university precedent. Id. at 8-15 & n.11. Young later certified that ruling for appellate review. ECF No. 210, at 2-3, 6-7 (Nov. 9, 2026). Defendants identify no comparable CSP-specific circuit holding.

CSP's statewide mission, appointed Board, Comptroller and JLARC oversight, and public audit remain relevant. Va. Code §§ 23.1-701(A), (D)-(E), -710; 30-331. In Galette,

appointment, removal and veto powers did "not meaningfully affect NJ Transit's status" given its legal independence and judgment responsibility. 607 U.S. at 529-30. Gray therefore asks the Court to find that CSP is not an arm of the Commonwealth and reject this ground for denying leave. Hutto permits early immunity resolution on a sufficient record. 773 F.3d at 545-46. If the Court identifies a material unresolved question of formal judgment responsibility, compulsory replenishment or legal ownership, Gray requests limited jurisdictional discovery directed to that question before leave is denied on that basis. See Young, ECF No. 203, at 3-5, 10-15.

**B. Morris's limited official-capacity claim supports prospective relief and satisfies the naming requirement.**

If CSP is immune, Gray invokes Ex parte Young for prospective ADA relief from Morris. Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374 n.9 (2001). Young asks whether an ongoing federal violation is alleged and prospective relief sought, without deciding the merits. Verizon Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645-46 (2002).

The ADA counts challenge the charged employment decisions; paragraph 69G addresses their alleged continuing operation through CSP's maintained abandonment classification and threatened reference use. Formal issuance, HR authorship, management circulation and no communicated correction after requested review support the retention inference. Gray seeks comparable technology-leadership work and alleges likely employment inquiries. TAC ¶¶ 57, 61-63, 69G. CSP's later account repeated abandonment. TAC ¶ 60C. Count V links the classification to Gray's June 23 and June 27 opposition; § 12203(a) protects "any individual." Count VI links it to his known association with his disabled wife and alleges qualification at the June employment decisions. TAC ¶¶ 69G, 99B-99M. Stanley v. City of Sanford, 606 U.S. 46, 52-55 (2025), measures qualification at the alleged discrimination and distinguishes retaliation's broader coverage. Each ADA basis warrants separate assessment.

Allan said the Board "hires Mary and it delegates all staff decisions to her." ECF No. 43-2 at 65 (32:08-32:13). That delegation and Morris's statutory management role support her alleged ability to correct CSP-controlled records, unlike Hutto's administrators. 773 F.3d at 549-51; TAC ¶¶ 6, 10, 65-66, 69G; Va. Code § 23.1-703(A).

Doe permitted a prospective claim concerning an erroneous expulsion record despite UNC's immunity. Doe v. Univ. of N.C. Sys., 133 F.4th 305, 313-14, 318-19 (4th Cir. 2025). Correa likewise allowed prospective employment-record relief under equal protection; its later merits dismissal preserved that conclusion. Correa v. Rector & Visitors of Univ. of Va., No. 3:24-cv-00065, ECF No. 41, at 11-12 (W.D. Va. July 23, 2025); ECF No. 86, at 24 n.9 (June 18, 2026). Both involved constitutional claims. Under §§ 12117(a), 12203(c) and 2000e-5(g)(1), Gray seeks correction or effective annotation of CSP's operative classification for future employment-reference use, to end the continuing ADA violation proved. TAC ¶¶ 69G, 102A. He seeks no personal ADA damages or retrospective monetary relief from Morris.

Both charge forms name CSP and identify abandonment as the discharge reason. ECF No. 43-2 at 173, 179-81. CSP substantively answered the charged association-discrimination and retaliation allegations. Id. at 137, 145-47. That response shows institutional notice and an opportunity for voluntary compliance; Morris is sued officially to implement relief concerning the same record. Section III addresses timeliness. Opp. 18.

Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 460-61 (4th Cir. 1988), treated the college and board as identical and described official-capacity relief against the unnamed president as institutional, reserving the broader identity exception. Causey v. Balog, 162 F.3d 795, 800-01 & n.1 (4th Cir. 1998), assumed representative-capacity claims "without deciding," describing Alvarado as allowing the unnamed president's official-capacity suit.

Johnson v. State of Md., 940 F. Supp. 873, 875-76 & n.2 (D. Md. 1996), dismissed unnamed official-capacity defendants while the State remained a defendant. Walton rejected individual Title VII liability without reaching naming exceptions. Walton v. Greensville Corr.

Ctr., No. 3:14CV628, ECF No. 27, at 12-14 (E.D. Va. May 21, 2015). Raiford allowed prospective ADA reinstatement against the unnamed head of an immune charged agency; an official was necessary, not redundant. Raiford v. Md. Dep't of Juvenile Servs., No. DKC 12-3795, ECF No. 40, at 12-15 (D. Md. Aug. 28, 2014).

**V. The retained counts and personal FMLA claims are not futile.**

**A. Counts I and II allege control over leave and punishment for seeking it.**

Counts I and II challenge the June 27 forced exit and June 30 discharge, with individual liability based on each official's control and conduct. Crittendon requires supervisory control and responsibility for the alleged violation, in whole or part, in the employer's interest. 29 U.S.C. § 2611(4)(A)(ii)(I). It rejected an HR manager's approval signature and generalized benefits-denial allegations, while distinguishing substantial termination authority without final firing power. Crittendon v. Arai Americas, Inc., No. 2:13-cv-567, ECF No. 24, at 6-9 (E.D. Va. Jan. 28, 2014). Hughes distinguishes actual control from outside advice. Hughes v. Musselman Hotels Management, LLC, No. 3:16cv708, ECF No. 16, at 7-11 (E.D. Va. Nov. 4, 2016). Public officials exercising actual control may qualify. Ainsworth v. Loudon Cnty. Sch. Bd., 851 F. Supp. 2d 963, 973-75 (E.D. Va. 2012).

Bishop directly supervised Gray, prescribed office-day PTO, classified the absences as unprotected, imposed the June 27 ultimatum, and issued the June 30 discharge after receiving his medical notice. TAC ¶¶ 11A, 28, 35-36, 46, 52-57. Allan linked the known care needs to PTO and FMLA, pressed the departure ultimatum, and tied the remote exit period to ending “this PTO thing Tuesday, Wednesday, Thursday.” Id. ¶¶ 11B, 32, 44-46.

Defendants incorrectly state that the TAC "does not allege any FMLA involvement by Morris." Opp. 8. Paragraphs 11C and 79 allege her use of Gray's care leave in the June 27 decision, with approval on information and belief. Allan's June 5 email confirms that "Mary was part of the decision" and "schedules are delegated to the CEO." ECF No. 43-2 at 10. In the

recording, Allan identified Morris as the final internal decisionmaker on work location and confirmed, "we did talk to her about it." Id. at 44 (13:36-13:55).

In early May, Gray met with Morris and read aloud prepared notes describing his wife's bipolar disorder and need for care and family support in Utah. TAC ¶¶ 23, 25. His May 6 email to himself preserves the notes. ECF No. 43-2 at 169-171. On June 27, Morris questioned his earlier flexible arrangement and defended her refusal: "I don't see any situation in which we would approve an employee working full-time remote in Utah." Id. at 71, 74-75 (8:13-8:19; 12:18-13:30). She spoke after the medical-disclosure discussion. After further negotiations and the immediate ultimatum, Morris joined the discussion of health coverage under the departure arrangement. Id. at 73-76, 78-83.

His disclosure and her participation in the medical, PTO and departure discussion support the inference that she understood the PTO's medical purpose. TAC ¶¶ 11C, 25, 41, 43-49, 69B, 73, 79. That alleged use of qualifying care absences concerns an employment decision within Morris's control. 29 C.F.R. § 825.220(c). The FMLA claims against Allan and Morris concern the June 27 compelled departure and its consequences; those against Bishop and CSP also concern the June 30 discharge. TAC ¶¶ 74, 79-82.

Gray's presence helped moderate his wife's condition and provided psychological support on June 24-26; required Richmond attendance would prevent that care, although remote work was possible. June 30's acute episode separately required time away from otherwise available remote work. 29 C.F.R. § 825.124(a); TAC ¶¶ 22, 40, 53-54, 67. His June 23 communications described the medical needs, Bishop's PTO directions and his coming absence; his June 30 text requested that day's leave through the accepted channel in the known family-medical context. Id. ¶¶ 37-40, 53-55, 72-75, 78-81A.

Defendants again rely on their incorrect assertion that Gray "never alleges" an FMLA leave request, although Gray corrected it in ECF No. 45 at 5. ECF No. 41 at 9; Opp. 6-8. SAC

paragraph 54 quotes his June 30 request, paragraph 72 alleges contextual notice, and paragraph 78 alleges he "exercised or attempted to exercise family-care leave rights."

Notice of a qualifying need does not invariably require an express FMLA request. 29 C.F.R. §§ 825.302(c), 825.303(b); Dotson v. Pfizer, Inc., 558 F.3d 284, 295-96 (4th Cir. 2009). Earlier PTO or an eligibility notice does not establish § 825.303(b)'s prerequisite for its stricter notice rule: previously provided FMLA-protected leave for the same reason. TAC ¶ 72. Henry authorized PTO notice by text; Bishop answered Gray's May 29 PTO text, "Ok thank you." TAC ¶¶ 24, 29; ECF No. 43-2 at 92, 98. See Roberts v. Gestamp W. Va., LLC, 45 F.4th 726, 733-36 (4th Cir. 2022). Gray's objection concerned extended unpaid leave as a long-term working solution; he intended to use FMLA protection for necessary care if CSP denied a workable alternative. TAC ¶¶ 32, 38A; ECF No. 45 at 6-8. Paid PTO may run concurrently with FMLA leave, and prospective rights cannot be waived. 29 C.F.R. §§ 825.207(a), 825.220(d). DOL explains that once an eligible employee communicates a qualifying leave need, neither side may decline protection for that leave, expressly disagreeing with Escriba's election rule. WHD Opinion Letter FMLA2019-1-A, at 2 & n.3 (Mar. 14, 2019).

Adequate notice triggers a duty to seek needed clarification. Roberts, 45 F.4th at 733; 29 C.F.R. § 825.303(b). Gray alleges no inquiry about June 30 care before his 12:13 p.m. discharge. TAC ¶ 55.

Defendants' certification defense assumes a medical-certification request governing the June 24-26 or June 30 absences. The TAC and its exhibits do not establish one. The TAC reports CSP's references to FMLA paperwork and its claim that an eligibility notice had expired; it does not adopt those assertions as true. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167-68 (4th Cir. 2016). Those references do not establish an applicable request, its response period or the required consequences notice. ECF No. 43-2 at 15, 47, 197-198; 29 C.F.R. §§ 825.300(c)(1)(ii), 825.305(a)-(b), (d). Bishop also invited Gray to "restart the process." ECF No. 43-2 at 15. Gray alleges that his June 23 care communications and separate

June 30 request sought protection through that process. TAC ¶¶ 38A, 40, 53-55, 75A, 81A; ECF No. 45 at 9-10. Defendants cannot establish futility under the Rule 12(b)(6) standard by supplying a certification request or its terms through counsel's assertions. ECF No. 41 at 11; Opp. 6-8.

Gray also alleges punishment for legitimate requests and attempts to exercise FMLA rights. That claim does not concede that CSP requested medical certification or that Gray's care absences lacked protection. TAC ¶ 81A; ECF No. 45 at 9-10; 29 C.F.R. §§ 825.303(b), 825.220(c)-(d). Gray challenges the June 27 forced exit itself. Alternatively, even if departure was already contemplated, he alleges that the June 30 notice caused CSP and Bishop to end employment and health coverage sooner. TAC ¶¶ 74, 79-81; ECF No. 45 at 11-14.

Defendants say their EEOC and litigation accounts are consistent: the June 23 email did not cause termination, but that day's attendance communications solidified Gray's departure. Opp. 6 n.2. But Gray's June 23 text repeated the care-related obstacle to weekly Richmond travel that Bishop already knew. She had required PTO for Tuesday, Wednesday and Thursday office absences while permitting Monday and Friday remote work. TAC ¶¶ 28, 35, 39, 60A. The TAC also alleges that CSP listed June 24-26 as attendance occurrences after a warning and reported: "Did not return, called out Tuesday-Thursday." TAC ¶ 60B; ECF No. 44 at 9-12. Their attendance account does not explain why PTO Bishop directed became grounds for forced exit, or why CSP discharged Gray after Monday's medical notice despite Bishop's Friday promise to restore access knowing the resignation email was missing. ECF No. 45 at 11-14.

**B. Count III alleges a stigmatizing discharge without adequate name-clearing process.**

Count III alleges a false accusation that Gray deliberately abandoned his teams and responsibilities in breach of professional integrity and trust, likely disclosure to prospective employers, and no meaningful chance to clear his name. These allegations answer Defendants' stigma, disclosure and process objections. Opp. 8-10; TAC ¶¶ 61-66, 85-89. Ridpath

distinguishes contextual accusations of serious character defects, including "dishonesty or immorality," from ordinary incompetence and found fair warning without an earlier case using the identical label. Ridpath v. Board of Governors Marshall University, 447 F.3d 292, 308-09, 313-14 (4th Cir. 2006). Ridpath treated the alleged professional meaning of "corrective action" as a factual question inappropriate for resolution on the pleadings. Id. at 309. Sciolino protects against false serious discharge information likely to reach prospective employers. Sciolino v. City of Newport News, 480 F.3d 642, 646-47 & n.2, 649-50 (4th Cir. 2007). Calling the termination a "routine" employment decision does not resolve the alleged professional stigma. Opp. 8; ECF No. 45 at 14-20.

At the June 27 meeting, Gray denied abandonment and said, "I'm trying to save my position." Bishop refused his request to think over the weekend and demanded resignation or termination at the meeting's end. To preserve income and health coverage for himself and his ill wife, Gray agreed to continue working under that ultimatum, expressly reserving his rights. Management then requested a resignation email and invited questions; Gray said they had been answered. No supporting documents were presented. TAC ¶¶ 45-48, 50, 87; ECF No. 43-2 at 79-81 (19:06-23:08). Sciolino could not determine from the pleadings that a pre-discharge meeting supplied adequate process. 480 F.3d at 646 n.1. Gray alleges no meaningful chance to organize and present his PTO directions and work communications rebutting abandonment. ECF No. 45 at 18-20.

Gray also used the Board channel Allan identified for reports of illegality. ECF No. 43-2 at 10, 65. His August 27 letter requested investigation, review of the executive decisions leading to his termination and remedial action. A Board copy addressed "c/o Mary Morris" was delivered through CSP's office on September 8. Id. at 107, 112-113, 118. That institutional delivery supports the pleaded review request; it does not establish Morris's personal reading or refusal. Gray alleges no opportunity to clear his name and no review or correction of the abandonment charge. TAC ¶ 63.

TAC ¶¶ 62 and 86 allege both likely inquiries from employers considering Gray for comparable technology-leadership work and CSP's likely response with its maintained abandonment reason. That inference rests on the formally issued classification, circulation to responsible officials, continued maintenance after requested review, and DHRM's guidance directing verifiers to agency HR. Id. ¶¶ 57, 61-63, 86. Sciolino requires likely dissemination rather than mere possible availability, but not completed disclosure. 480 F.3d at 649-51. It permitted amendment alleging likely dissemination and addressed a “reason for leaving,” not only an entire physical file. Id. at 647 n.3, 650-51. Defendants again assert that CSP "in fact" does not release files. ECF No. 41 at 19; Opp. 10. Gray objected in ECF No. 45 at 17. Counsel's unsupported denial cannot displace the TAC's allegations under Rule 12(b)(6) or answer whether CSP communicates its separation reason.

Count III identifies each official's role: Allan pressed the abandonment accusation, Bishop imposed the ultimatum and issued the classification, and Morris allegedly approved it through the authority and participation described above. TAC ¶¶ 50, 64-65, 87-89. CSP's liability rests on Morris's alleged exercise of delegated final authority over classification and review, rather than managerial discretion alone. TAC ¶¶ 65, 89; ECF No. 45 at 23. Qualified immunity does not extend to Morris's prospective official-capacity claim or CSP's entity claim. Ridpath, 447 F.3d at 306-07 & n.13. Those claims require an underlying violation, but a ruling confined to clearly established law would not dispose of them. TAC ¶¶ 66, 89, 91; ECF No. 45 at 20-23.

**C. Count IV pleads defamatory meaning, falsity and abuse of any privilege.**

The letter terminates Gray "effective immediately due to job abandonment." It then states: "As we have discussed to include most recently on Friday June 27th, your permanent move to Utah and resulting inability to work in-office as this role requires cannot be supported." ECF No. 43-2 at 30. The Utah sentence does not expressly define or withdraw the abandonment accusation. The TAC alleges that the full letter falsely accused Gray of deserting his teams and responsibilities as a senior technology director. TAC ¶¶ 12-14, 93-96; ECF No. 45 at 23-27;

Opp. 13. Wynn recognized that abandonment can portray an employee as "irresponsible and unprofessional" for leaving without notice or proper procedures. Wynn v. Wachovia Bank, N.A., No. 3:09cv136, ECF No. 51, at 17-18 (E.D. Va. July 13, 2009). That meaning must reasonably follow from the actual words; paragraph 96 separately pleads intent and conveyance. Webb v. Virginian-Pilot Media Cos., 287 Va. 84, 89-90 (2014); Pendleton v. Newsome, 290 Va. 162, 174-75 (2015).

Defendants say Gray admitted refusing to attend the office, making "job abandonment" substantially true. Opp. 11-12. Gray already corrected that account: he said he was "not refusing" but "not able" to attend. ECF No. 45 at 26; TAC ¶ 42; ECF No. 43-2 at 68. Bishop directed PTO for "any future days" he could not attend because of Utah travel and recognized Monday/Friday work; paragraph 40 alleges compliance on June 24-26. TAC ¶¶ 28, 35, 40, 95; ECF No. 43-2 at 15-16. Under the ultimatum, Gray agreed to continue working with rights reserved; CSP reserved early termination. He did not send the requested resignation email, yet Bishop, knowing it was missing, promised Monday access and outreach. TAC ¶¶ 47-52; ECF No. 43-2 at 32, 80-81. Hyland requires truth to be assessed on the whole statement, including reasonable implications, rather than isolated admitted facts. Hyland v. Raytheon Technical Services Co., 670 S.E.2d 746, 751-52 (Va. 2009). If the letter conveys the pleaded additional charge, relocation and attendance conflict alone do not establish its truth. ECF No. 45 at 26-27.

Defendants say Gray "concedes the privileged occasion" and "pleads no facts to overcome" the privilege. Opp. 10-11. His opposition assumed privilege only to argue its abuse; paragraph 97 alleges knowing or reckless falsity and bad faith to discredit his professional conduct. ECF No. 45 at 27-29; TAC ¶ 97. Cashion v. Smith, 286 Va. 327, 338-39 (2013). As his opposition explained, Bishop prescribed the PTO course, promised Monday access despite the missing resignation email, and allegedly received the medical notice before publication. Accusing Gray of desertion despite his alleged compliance with her PTO directions and agreement to continue working under the ultimatum supports an inference of knowing or reckless falsity. TAC ¶¶ 35,

47-54, 95-97. Nedrick found favorable feedback, a no-complaints assurance, denial of performance charges and age-replacement allegations insufficient. Nedrick v. Southside Regional Medical Center, No. 3:19cv202, ECF No. 34, at 4, 14-16 (E.D. Va. Feb. 3, 2020). Defendants' demand for "pleading, by clear and convincing evidence" confuses the ultimate proof burden with pleading, as Gray already explained. Opp. 11; ECF No. 45 at 29. Bade reversed a verdict for insufficient trial proof. Southeastern Tidewater Opportunity Project, Inc. v. Bade, 435 S.E.2d 131, 132-33 (Va. 1993).

**VI. Grant leave and rule before the ninety-day deadline.**

Gray requests leave to file ECF No. 43-1 with all six counts, capacities and remedies, and permission to incorporate proposed paragraphs 69E2-69E3 into the authorized TAC. Leave on ECF No. 43-1 need not depend on accepting those additions. He requests that the TAC be deemed filed October 23, 2026. ECF No. 43 ¶ 7. ECF No. 40 should then be denied without prejudice as moot, with a response under Rule 15(a)(3). Alternatively, permit independently supported amendments and correction of curable defects in a complete pleading.

Gray received DOJ's notice October 16, 2026, making January 14, 2027 the ninety-day deadline. ECF No. 43-2 at 183. He requests resolution by January 4, 2027. If leave remains unresolved, he intends a timely protective ADA filing and coordination request.

Respectfully submitted,

Alexander C. Gray, Plaintiff pro se
150 N. Snow Canyon Dr., Unit 19, Ivins, UT 84738
(804) 335-7579 | zandergray1@gmail.com
Date: November 13, 2026

**CERTIFICATION**

I declare under penalty of perjury that:
(1) No attorney has prepared, or assisted in the preparation of this document.
Alexander C. Gray
Name of Pro Se Party (Print or Type)
Alexander C Gray
Signature of Pro Se Party
Executed on: November 13, 2026